Commonwealth *v.* Shriner, Appellant.

Submitted June 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edward F. Browne, Jr.,* Assistant Public Defender, and *Theodore S. Danforth,* Public Defender, for appellant.

*Charles A. Achey, Jr.,* Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., December 11, 1974:

On April 2, 1973, Harry Seymour Shriner, appellant, was convicted of rape following a jury trial. On November 9, 1973, he was sentenced to a term of one to two years in prison, and ordered to pay $100.00 plus costs. It is from this judgment of sentence that appellant raises this appeal.

Appellant alleges errors which he feels warrant arrest of judgment and/or the grant of a new trial. We find no merit in these contentions, and will affirm the judgment of the lower court.

The first allegation of error is that the evidence was insufficient to sustain appellant's conviction. It is well-settled law that in testing the sufficiency of the evidence, we must review the testimony in the light most favorable to the verdict winner. *Commonwealth v. Palmer,* 229 Pa. Superior Ct. 1, 323 A. 2d 69 (1974); *Commonwealth v. Porter,* 229 Pa. Superior Ct. 314, 323 A. 2d 128 (1974). In so doing, we will accept as true the Commonwealth's evidence and all reasonable inferences arising therefrom, *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A. 2d 195 (1970), and will not overturn the verdict on grounds of insufficient evidence where there has been no abuse of discretion by the factfinder. *Commonwealth v. Zapata,* 447 Pa. 322, 290 A. 2d 114 (1972); *Commonwealth v. Porter, supra.*

The testimony credited by the jury reveals the following facts:

On the evening of July 24, 1972, appellant and three other young men were sitting in a car parked in the lot adjacent to a laundromat at Middletown Plaza. At about 8:15 p.m., Theresa Saylor, the prosecutrix below, walked near the car, was grabbed by two of the occupants, and pulled into the car through the window. Theresa testified that she knew the boys and thought that they were "just joking around." [NT 20] Both Theresa and a friend who saw her in the car told the boys that Theresa had to be home at 8:30 and she would be late if they did not let her out of the car, but they would not. Instead, they drove to a place called "The Big 'M'" for pizza. (The appellant was the owner and driver of the automobile.)

After obtaining the pizza, the boys drove to a secluded wooded area known as the "Purple Lights," where they stayed from about 9:00 p.m. until 11:00 p.m. During that time, they ate the pie and drank beer. Theresa testified that the boys forced her to drink two beers, but she later drank two others of her own free will. She felt sick as a result of drinking that amount of beer, and asked to be let out of the car. One of the boys (a Ronald Snyder) accompanied Theresa on a short walk, and then pushed her back into the car.

Another of the boys, but not appellant, cut a hole in Theresa's shirt with his knife, and then, with Ronald Snyder's assistance, tore Theresa's clothes. A short time later, Snyder forced Theresa to have sexual intercourse with him. During this time, the other boys, including appellant, left the car.

Theresa testified that she "passed out" from time to time after the first alleged rape as a result of consuming too much beer. Each time she regained consciousness, she found "a different one on top of me but they were all on top of me." [NT 29] None of the others

penetrated Theresa, but according to her testimony, all of the boys attempted to have sexual relations with her. She testified with regard to appellant that he had no weapon with him, that he touched her breast with his hand, that he had no erection, but that he laid on top of her and attempted to have intercourse with her.

After several hours at the Purple Lights, the boys returned to town and left Theresa at St. Mary's School, near her home. Theresa then walked home, arriving there around midnight. Her parents met her at the door, and upon learning that someone had hurt Theresa, called the police. Theresa was taken to the hospital and examined early the next morning. The tests for sperm were positive.

It is axiomatic that questions of the credibility of witnesses are for the jury. *Commonwealth v. Rankin,* 441 Pa. 401, 272 A. 2d 886 (1971) ; *Commonwealth v. Hayes,* 205 Pa. Superior Ct. 338, 209 A. 2d 38 (1965). When the findings of the jury are supported by the record, this court will not substitute its assessment of credibility of the testimony for that of the jury. *Commonwealth v. Sullivan,* 436 Pa. 450, 263 A. 2d 734, *cert. denied,* 400 U.S. 882 (1970).

On the basis of the evidence presented in this case, we cannot find an abuse of discretion on the part of the trial judge in refusing appellant's post-trial motions. Appellant drove Theresa, Ronald Snyder, and the other boys to the scene of the rape, left the car while it took place, himself attempted to engage in sexual relations with Theresa, and later returned Theresa to town. He so acted even though he knew Theresa was to be home by 8:30 that evening; and he did nothing to prevent the actual rape.

This evidence indicates appellant aided and abetted a rape. As this court stated in *Commonwealth v. Reilly,* 200 Pa. Superior Ct. 461, 190 A. 2d 164 (1963), all who are present aiding, abetting, and encouraging the

ravishing are guilty of rape, although only one of the men may actually be the ravisher. The record in the instant case clearly established appellant's participation as an aider and abettor, and we, therefore, affirm his conviction for rape.

Appellant's next allegation of error concerns a statement made by a co-defendant which contained information implicating appellant. At the outset of the trial, appellant requested a severance so that the statement would not be introduced against appellant. When the District Attorney agreed not to use the statement in the Commonwealth's case in chief, the trial judge refused the motion, basing his decision on the agreement and several other factors.

During the trial, the District Attorney did not introduce the statement in chief. However, on cross-examination of the co-defendant, the District Attorney asked the following questions which appear in the Notes of Testimony at 473-74: "Q. Now, you said that nobody touched Theresa. Do you remember talking to Trooper Fry on July 28, 1972? A. I guess. Q. Do you remember talking to him? A. Yeah. Q. Do you remember telling him at that time you went out in the woods and had intercourse with Theresa? A. Yeah. Q. Do you remember saying that you came back to the car and that you were drinking again? A. I don't remember really what I said. Q. Well, do you remember then saying that after you got back in the car each of the other boys— MR. BROWNE: Objection. THE COURT: Before you answer that, ask the question. BY MR. LUCARELLI: [continuing] Q. Do you remember that each one of the guys got her in the car? MR. BROWNE: I object to that question."

At this point, the trial judge held a sidebar conference and sustained the objection. He refused a motion for a mistrial, but issued cautionary instructions to the jury to disregard the question because ". . . [the witness] is not allowed to testify as to what he said in-

volves any of the other Defendants—what he said at that time involving any of the other Defendants." [NT 476] The cautionary instruction further defined what the witness could and could not properly testify to and admonished the jury to eliminate the question from their minds.

Appellant now asserts that he was prejudiced in two ways by the District Attorney's question: (1) his right to a fair trial was violated in that his case should have been severed from the witness', and (2) the use of the incriminating statement was basic and fundamental error. We find no merit in either contention.

The refusal of a motion for severance is within the discretion of the trial court and will not be reversed unless a clear abuse of discretion is shown. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820, *cert. denied,* 348 U.S. 875 (1954). In the instant case, the questions asked by the District Attorney were within the proper scope of cross-examination and did not result in an admission of the statement into evidence. The District Attorney, therefore, did not abuse his agreement. It should be noted that the trial court refused the severance for other reasons—including the fact that it was not timely made. Under these circumstances, appellant has not shown such severe prejudice that we must grant a new trial.

Appellant's allegation that the District Attorney's question constituted a prejudicial use of the statement is likewise without merit. As stated, the questions were proper cross-examination. The lower court sustained the objection on a proper basis before an answer was given and cautioned the jury not to consider it during deliberation. The confession was never introduced into evidence. The instant situation is unlike that in *Commonwealth v. Tull,* 224 Pa. Superior Ct. 494, 307 A. 2d 318 (1973), relied upon by appellant. In *Tull,* a motion to suppress the confession was denied when the

Commonwealth agreed not to introduce the confession at trial. In the case at bar, no such motion was presented, nor has any suggestion been made that the statement was improperly obtained so that its use would have been prohibited, under *Commonwealth v. Padgett*, 428 Pa. 229, 237 A. 2d 209 (1968), in the Commonwealth's case in chief.

Appellant further contends that the District Attorney exceeded the scope of cross-examination when he questioned one witness about a threat allegedly made by a co-defendant Hardy and asked another witness whether co-defendant McKenzie had once cut the witness with a knife. The scope of cross-examination is largely within the discretion of the trial judge, and will not serve as the basis for reversal where no apparent injury resulted from the extent of the cross-examination. *Commonwealth v. Smith*, 198 Pa. Superior Ct. 499, 182 A. 2d 104 (1962).

In the case now before us, neither of appellant's allegations of improper cross-examination has merit, as neither directly involved nor implicated appellant. In addition, the lower court cautioned the jury to disregard the testimony in both instances, and consequently cured any error which may otherwise have resulted. *Commonwealth v. Quinn*, 144 Pa. Superior Ct. 400, 19 A. 2d 526 (1941).

Appellant next contends that the learned trial judge erred in refusing to allow defense counsel to read a dictionary definition of "chastity" into evidence. However, appellant has not shown prejudice resulting from the ruling.

Several defense witnesses testified as to Theresa's reputation for chastity. Those who said they did not know what "chastity" means were not permitted to testify as to her reputation in that regard. These witnesses were not competent to testify, and the refusal to

allow their opinions into evidence was not error for that reason. In addition, any testimony they would have given regarding Theresa's reputation for chastity would have been cumulative to that of defense witnesses who were permitted to so testify.

Appellant finally contends that it was error for the lower court to admit into evidence the testimony of several policemen who were in the chain of custody of Theresa's clothing, as their names had not been supplied to the appellant on his bill of particulars. This assertion is not meritorious as (1) no bill of particulars appears of record, and (2) the testimony of these witnesses was cumulative to that of a Trooper Fry whose name was supplied to the co-defendants on the indictment.

Judgment of sentence affirmed.