350 A.2d 847

COMMONWEALTH of Pennsylvania

v.

Sylvester THOMAS, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 20, 1975.

Decided Jan. 29, 1976.

444

---

Robert O. D'Ambrosio, West Chester, for appellant.

Timothy H. Knauer, West Chester, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

On July 19, 1973, appellant Sylvester Thomas was convicted by a jury in the Court of Common Pleas, Chester County of murder of the first degree in the shooting death of his wife. Following the denial of post-trial motions by the court en banc, a sentence of life imprisonment was imposed. This direct appeal followed.

First, appellant raises the issue of the sufficiency of the evidence to sustain his conviction. Appellant does not deny the shooting nor does he claim that the killing was excusable or justifiable. Rather, appellant asserts that the evidence dictated a finding of voluntary manslaughter. We disagree for the reasons set forth below.

It is well settled that in passing upon the sufficiency of the evidence to sustain a criminal conviction, the evidence must be read in the light most favorable to the Commonwealth. *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Pride*, 450 Pa. 557, 559, 301 A.2d 582, 583 (1973). Furthermore, the test of the sufficiency of the evidence is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Stanley*, 453 Pa. 467, 469, 309 A.2d 408, 410 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 489, 295 A.2d 337, 338 (1972).

The salient facts adduced at trial indicate that at approximately 8:00 A.M. on March 10, 1973, the date of the incident, appellant visited his friend Samuel Teal. Mr. Teal testified that they each drank a "shot of whiskey" and appellant explained that due to a strike against his employer, he had been out all night picketing. During the conversation the witness said to Thomas, "When you go home your old lady is going to get you. She won't like you laying out at night." Appellant then responded, "She mess with me and my old lady will get this" and pulled from his pocket the .22 calibre gun later identified as the murder weapon.[1]

The Commonwealth also presented testimony of several relatives of appellant, including his daughter, who

---

1. On cross-examination, Teal stated that he did not believe that appellant would actually use the weapon against his wife.

were sitting in the living room at the time of the shooting. They testified that appellant entered the home at approximately 1:30 P.M., greeted them all, picked up his two-month old grandson from the floor and carried the infant upstairs to the bedroom where Mrs. Thomas was dressing. The witnesses stated that almost immediately they heard loud voices and shouting emanating from the bedroom, but could not ascertain the actual words. After several minutes passed, gun shots rang out and appellant came down the stairs. Rushing up to the bedroom they discovered the victim lying on the floor.

The investigating detective testified that appellant was given his Miranda warnings and voluntarily confessed to pulling the gun out of his pocket and shooting the victim because she pushed him. He further stated that appellant admitted being "fed up" with his wife because of her arguing and going around with other men.

Appellant testified on his own behalf that he had a good relationship with his wife and was not serious about the remark he made to Mr. Teal. He claimed that when he entered the bedroom he gave his wife some money and asked her to buy some clothing. She then allegedly began hollering and punching him with her fists, almost causing appellant to drop the infant he held in his arms. Thomas then explained that he was overcome by a combination of anger and fear for his grandson's safety. He stated that he reached into his dresser drawer, removed the gun which he had placed there that morning and fired five shots at his wife.

Appellant urges that the only direct evidence presented at trial was his account of the incident. Based on that premise, he asserts that his testimony negated the possibility of murder of the first degree. This argument is clearly fallacious. While it is clear that a criminal conviction may not be based upon mere surmise or conjecture, the Commonwealth's burden in proving a

criminal offense or the elements thereof may be sustained by means of wholly circumstantial evidence. *Commonwealth v. Stanley*, 453 Pa. at 469, 309 A.2d 408; *Commonwealth v. Amato*, 449 Pa. 592, 596, 297 A.2d 462, 464 (1972). A finder of fact is not bound by an actor's stated intention but may find that he intended the natural and probable consequences of his act. *Commonwealth v. Boyd*, 463 Pa. 343, 344 A.2d 864, 867 (1975); *Commonwealth v. Murray*, 460 Pa. 605, 334 A.2d 255, 258 (1975); *Commonwealth v. Boyd*, 461 Pa. 17, 334 A. 2d 610, 613 (1975); *Commonwealth v. Gidaro*, 363 Pa. 472, 478–79, 70 A.2d 359, 362 (1950).

■ The coroner testified that the deceased was struck by four bullets in the back, collarbone, neck and chest areas. The latter two shots deflected upon entering the body and perforated the lungs, thereby causing the death. Furthermore, appellant himself admitted the victim was standing only a few feet away at the time the weapon was fired. We are therefore satisfied that the record provides sufficient evidence from which the jury could find the requisite specific intent for murder of the first degree. The fact-finder was free to reject the inference arising from the use of a deadly weapon upon a vital part of the body, *Commonwealth v. Murray*, supra, 334 A.2d at 257; *Commonwealth v. Cannon*, 453 Pa. 389, 396, 309 A.2d 384, 388 (1973); *Commonwealth v. Hornberger*, 441 Pa. 57, 62, 270 A.2d 195, 198 (1970); likewise the jury was also free to disbelieve appellant's explanation. *Commonwealth v. Boyd, supra*; *Commonwealth v. Murray, supra*, 334 A.2d at 258; *Commonwealth v. Boyd, supra*; *Commonwealth v. Gidaro, supra*. Apparently, the jury chose not to believe appellant's testimony and on appeal, this Court will not disturb that determination. See *Commonwealth v. Hampton*, 462 Pa. 322, 341 A.2d 101, 103 (1975); *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837 (1973).

Appellant next asserts that trial counsel was ineffective. First, Thomas claims his attorney imprudently urged him to stand trial rather than accept a proffered six to twelve year sentence in exchange for a guilty plea to murder in the second degree. The basic test for determining the competency of counsel has frequently been set forth.

"The seminal question in determining whether a defendant was denied effective assistance of counsel is whether the course [2] chosen by defense counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 353 (1967).

"The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *Commonwealth ex rel. Washington v. Maroney*, supra at 604–605, 235 A. 2d at 352–353 (1967).

*Commonwealth v. Hosack*, 459 Pa. 27, 326 A.2d 352, 355 (1974).[3] Appellant's brief admits that:

"The facts of the present case bear out the proposition that this was not an 'iron-clad' case of murder. As the Honorable William J. Vogel stated in his opinion at Page 9, 'This is a tragic case . . . the evidence could also have warranted a verdict of either Second Degree murder of (sic) voluntary manslaughter . . .' "

**2.** Due to a publishing error the word incorrectly appears as "courts".

**3.** It is particularly significant that counsel is not here accused of persuading appellant to waive any of his rights but rather suggested that he avail himself of all of the protection provided under our system of jurisprudence. It would be in only the most unusual cases where such advice could be deemed a basis for an ineffective assistance of counsel claim.

Under these circumstances, we cannot conclude that counsel's advice was improper.

Second, appellant contends that during the course of the trial, he informed defense counsel that three of the jurors had fallen asleep, but his attorney failed to bring this to the court's attention. However, this allegation is completely dehors the record and we will not consider any question which depends upon facts not contained in the record.

"This phase of the Commonwealth's argument is completely and entirely based upon matters which do not appear upon the record . . . Not only can we not consider such an argument but such an attempt to go beyond the record in this matter is not to be countenanced." *Wolf v. Commonwealth*, 403 Pa. 499, 504, 505, 170 A.2d 557, 561 (1961). (Emphasis omitted).

See also *Commonwealth v. Young*, 456 Pa. 102, 114–115, 317 A.2d 258 (1974); *McCaffrey v. Pittsburgh Athletic Ass'n*, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972); *Kilian v. Allegheny County Distributor's Inc.*, 409 Pa. 344, 349, 185 A.2d 517–519–520 (1962).

Judgment of sentence affirmed.

POMEROY, J., concurs in the result.

MANDERINO, J., filed a concurring opinion in which ROBERTS, J., joined.

MANDERINO, Justice (concurring).

I concur in the result. The evidence was sufficient to establish that the killing was "willful, deliberate and premeditated," and, therefore, the majority was correct in sustaining appellant's conviction of murder in the first degree. *See* Act of June 24, 1939, P.L. 872, § 701, as amended, 18 P.S. § 4701. The majority, however, incorrectly states that use of a deadly weapon upon a vital part of the body infers the specific intent to kill neces-

sary for murder in the first degree. Under the laws of this jurisdiction, the use of a deadly weapon upon a vital part of the body does not by itself infer that the killing was "willful, deliberate and premeditated"; it infers malice and is sufficient evidence to sustain a conviction of murder in the second degree. *Commonwealth v. Roots*, 452 Pa. 535, 306 A.2d 873 (1973); *Commonwealth v. Robinson*, 452 Pa. 316, 305 A.2d 354 (1973). In order to sustain a conviction of murder in the first degree, other facts must exist to establish that the killing was "willful, deliberate and premeditated." See *Commonwealth v. Kittreles*, 465 Pa. 431, 350 A.2d 842 (1976), (*Manderino* dissenting joined by Roberts, J.); *Commonwealth v. O'Searo*, 466 Pa. ——, 352 A.2d 30 (1976) (Manderino dissenting joined by Roberts, J.). See also, *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Mosley*, 444 Pa. 134, 279 A.2d 174 (1971).

ROBERTS, J., joins in this concurring opinion.