389 A.2d 619
**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jeffrey CLARK, Appellant.**

Superior Court of Pennsylvania.

Argued March 14, 1977.

Decided July 12, 1978.

98

---

Joshua D. Lock, Public Defender, Harrisburg, for appellant.

Marian E. MacIntyre, Second Assistant District Attorney, with her, LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Following a jury trial appellant was found guilty of robbery,[1] aggravated assault[2] and conspiracy.[3] A sentence of ten to twenty years imprisonment was imposed on the robbery conviction. In addition, appellant received a five to ten year concurrent prison sentence on the aggravated assault indictment. No sentence was imposed on the conspiracy conviction other than a direction to pay the costs of prosecution. The sole issue on this appeal is whether the evidence is sufficient to sustain the verdicts.

It is fundamental that "[t]he test for the sufficiency of evidence in a criminal case is whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Bastone*, 466 Pa. 548, 552, 353 A.2d 827, 829 (1976); *Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617 (1977). See also *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976).

The record, considered in accordance with the foregoing principles, establishes the following: In the afternoon of December 30, 1974, Frank Brinser, an undercover narcotics agent employed by the Bureau of Drug Control, and George Waters, a police informant, were "cruising" the uptown area of Harrisburg in search of narcotics. While driving past the Three Lucky Dots Bar, Waters observed one Michael Johnston[4] standing outside in front of the bar. Johnston was an acquaintance of Waters and known to Waters as an individual capable of obtaining drugs. After calling Johnston over

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3701 (1973).

2. The Crimes Code, supra; 18 Pa.C.S. § 2702.

3. The Crimes Code, supra; 18 Pa.C.S. § 903.

4. Johnston was appellant's co-defendant in the lower court and was likewise found guilty of all charges. Johnston's appeal, however, is not presently before us.

to Brinser's vehicle, Waters soon turned the conversation to the subject of narcotics. Johnston indicated heroin could be purchased and went inside the bar to check the quantity available. In the meantime, agent Brinser and Waters moved the vehicle to a parking spot on the other side of the street directly across from the bar. Johnston emerged from the bar a few minutes later and joined Brinser and Waters in the vehicle where he informed them he would be able to obtain the desired amount of heroin. During the course of this conversation appellant, a black man, who is well over six feet tall and was attired in a white suit, appeared on the sidewalk some twenty to thirty yards from the vehicle and was identified by Johnston as the person from whom he was going to purchase the heroin. When Johnston attracted his attention, appellant responded by shaking his head in a negative manner and walked into the bar. Johnston then re-entered the bar in an attempt to persuade appellant to make the sale inside the vehicle. Shortly thereafter Johnston returned to the vehicle and reported that the transaction would have to be consummated inside the bar, but that agent Brinser could accompany him. While walking toward the bar Brinser stopped, bent down and removed a roll of bills from his sock, counted out $150.00 and placed the remainder back in his sock. At the same time, one Howard Cobb was on the other side of the street and also walking toward the bar. Cobb, apparently having observed Brinser's actions, followed the agent and Johnston into the bar.

Once inside the bar Johnston, agent Brinser and appellant met in the bathroom. Agent Brinser then glanced out the partially open door and observed Howard Cobb lurking outside the door. Cobb was the individual who was outside the bar when Brinser took the money from his sock. Brinser asked Johnston who Cobb was and Johnston warned him to "watch that dude." Immediately thereafter Johnston and Cobb switched places, that is, Cobb was now inside the bathroom and Johnston was just outside the door. Appellant, however, remained in the rear portion of the restroom. At this point, Cobb suddenly pushed agent Brinser against

the wall and demanded his money. When Brinser refused, Cobb began beating him severely and grabbed the $150.00 out of the agent's hand. After a brief pause Cobb demanded more money and then resumed his assault. While trying to fend off Cobb's blows agent Brinser noticed that two individuals were still standing inside the bathroom door. Brinser recognized one of the men as Johnston, but was unable to identify the other individual. As Cobb continued his assault one of the two men standing inside the restroom door stated, "You better give him all the money or we'll kill you." At this juncture Brinser, fearing for his life, drew his revolver, shot Cobb twice and fled the bar.

Both appellant and Johnston took the stand in their own defense. Johnston testified that he never had an agreement with appellant to deliver drugs. He did admit, however, that at the behest of agent Brinser and Waters he agreed to try and determine if any drugs were available in the bar. Johnston further stated that he asked several people in the bar—including appellant—whether they had any drugs and they all responded negatively. In short, Johnston admitted that he attempted to procure drugs, but that his efforts were unsuccessful and, in addition, that he never told Brinser or Waters that appellant would sell them drugs.

Appellant testified that he never saw Johnston until the day of the incident when Johnston approached him concerning the availability of drugs. Appellant also denied any participation in the robbery and assault and battery of agent Brinser. Indeed, appellant stated he was outside the bar when the shooting occurred. We are of the opinion the evidence was sufficient to establish appellant's guilt on the conspiracy charge, but not on the robbery and aggravated assault charges. With respect to the conspiracy charge, the Commonwealth proceeded on the theory that appellant and Johnston had agreed to sell heroin. The crux of appellant's argument is that his complicity in the conspiracy was based entirely on circumstantial evidence. While appellant concedes circumstantial evidence may properly sustain a conviction, *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687

(1977), he argues that his conviction for conspiracy was predicated upon suspicion and conjecture. We conclude otherwise.

The essence of the crime of conspiracy is a common understanding or agreement. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Cameron*, 247 Pa.Super. 435, 372 A.2d 904 (1977). This does not mean, however, that the Commonwealth must prove an explicit or formal agreement to establish the existence of a conspiracy. *Commonwealth v. Roux*, supra; *Commonwealth v. Cameron*, supra. "Indeed, direct proof of an explicit or formal agreement to commit a crime can seldom, if ever, be supplied and it need not be for 'it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence.'" *Commonwealth v. Roux*, supra, 465 Pa. at 482, 350 A.2d at 870, quoting *Commonwealth v. Eiland*, 450 Pa. 566, 570, 301 A.2d 651 (1973). While mere association alone will not suffice, "[a] conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: [cite omitted]." *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958); *Commonwealth v. Roux*, supra; *Commonwealth v. Eiland*, supra.

■ Instantly, while there was no direct evidence of an unlawful agreement, the circumstantial evidence warranted the inference that appellant and Johnston conspired to sell narcotics. Without reiterating all of the facts heretofore discussed, the evidence shows, inter alia, that Johnston identified appellant as the individual from whom he was going to obtain the heroin; when Johnston beckoned appellant to the agent's van appellant shook his head negatively indicating he would not sell narcotics outside the bar. After Johnston informed agent Brinser that the deal would have to be consummated in the bathroom of the bar, appellant immediately preceded them into the small restroom upon

observing their approach. While any one of these events standing alone would not establish a conspiracy to sell drugs, when viewed in conjunction with each other and in the context in which they occurred, we believe they furnished a "combination of evidence link the appellant to the crime beyond a reasonable doubt." *Commonwealth v. Petrisko*, 442 Pa. 575, 580, 275 A.2d 46, 49 (1971); *Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617, 625 (1977).

Turning to the robbery and aggravated assault charges, we are constrained to find the evidence insufficient to support the verdicts. On these charges it was the Commonwealth's position that although it was Cobb who actually assaulted and robbed agent Brinser, appellant was equally liable as an accomplice. Section 306 of the Crimes Code supra, 18 Pa.C.S. § 306, provides in pertinent part as follows:

"(b) Conduct of another.—A person is legally accountable for the conduct of another person when:

(3) he is an accomplice of such other person in the commission of the offense."

Under § 306(c) a person is an accomplice if:

"(1) with the intent of promoting or facilitating the commission at the offense, he:

(i) solicits such other to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity."

"To 'aid and abet' in the commission of a crime, one must possess a shared intent to commit it. [Citations omitted.]" *Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393, 398 (1977). Moreover, mere presence of the scene of the crime, standing alone is insufficient "to establish that one is an active partner in the intent of another to commit the crime." *Commonwealth v. Fields*, 460 Pa. 316, 320, 333 A.2d 745, 747 (1975); *Commonwealth v. Henderson*, supra.

The Commonwealth's evidence was insufficient to establish beyond a reasonable doubt that appellant was an

active partner in Cobb's intent to rob and assault agent Brinser. Viewed in the light most favorable to the Commonwealth, the record establishes no more than appellant's presence in the restroom when the assault and robbery occurred.[5] The record is devoid of any indication that appellant ever communicated with Cobb either prior to or during the course of the assault. Cobb was a stranger to the narcotics arrangement. From the evidence he was engaged only in the assault and robbery incident. Agent Brinser's testimony that one of the two other individuals inside the bathroom admonished: "You better give him all the money or we'll kill you;" and his testimony that, "there might have been more than one person hitting me," is insufficient to establish appellant's active participation in the attack absent any evidence identifying appellant as the individual who gave the warning or actually struck the agent.[6] Here, there was no such evidence.

In *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966), the victim was beaten and robbed while walking across a bridge. Prior to being knocked unconscious the victim noticed four men on the bridge with him. The evidence established that the appellant was one of the four men, but the victim could not state whether all four men attacked him or identify the appellant as one of the assailants. The Court held that although appellant was present on the scene, both prior and subsequent to the assault, mere presence alone was insufficient to establish appellant's participation in the robbery. See also *Commonwealth v. Fields*, 460 Pa. 316, 333 A.2d 745 (1975); *Commonwealth v. Cox*, 460 Pa. 566, 333 A.2d 917 (1975).

Instantly, the evidence—other than appellant's presence at the scene of the assault and robbery—"is so weak and inconclusive that as a matter of law the inferences of fact necessary to establish guilt could not be reasonably drawn."

5. Indeed, agent Brinser could not positively identify appellant as the third individual in the bathroom at this particular time.

6. Agent Brinser could not state who issued the warning, nor was he certain that anyone other than Cobb was striking him.

*Commonwealth v. Cox*, supra, 460 Pa. at 571, 333 A.2d at 919. In sum, while we find the evidence in this case sufficient to establish a conspiracy between appellant and Johnston to sell narcotics, we further find that this same evidence proves no more than a failure to consummate the unlawful transaction due to the intervening and independent criminal conduct of Cobb.

Finally, in view of our determination that the evidence is insufficient to sustain the convictions on the robbery and aggravated assault indictments, we must remand the record to the court below for resentencing on the valid conspiracy conviction. *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972); *Commonwealth v. Rios*, 246 Pa.Super. 479, 371 A.2d 937 (1977).

Judgments of sentence on the robbery and aggravated assault indictments vacated. Case remanded for resentencing on the conspiracy indictment.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.