401 A.2d 1355

**COMMONWEALTH of Pennsylvania**

v.

**Joseph P. IACINO, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided April 19, 1979.

Petition for Allowance of Appeal Granted Oct. 1, 1979.

---

9. See Motion in Arrest of Judgment at No. 11 in the case of Florence and at No. 7 in the case of Richard.

376

Charles F. Gilchrest, Sharon, for appellant.

Samuel J. Orr, IV, District Attorney, Mercer, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal arises from the denial by the court below of appellant's motions for a new trial and in arrest of judgment, following conviction after trial by jury of misapplication of entrusted or government property[1] and criminal conspiracy.[2] Appellant raises six issues for our consideration, none of which we find meritorious, and we accordingly affirm the judgment of sentence.

On June 4, 1975, the Honorable John Q. Stranahan authorized the convening of an investigating grand jury to inquire into activities of the Pennsylvania Department of Transportation (PennDOT), District 1–4. The grand jury was to deal with "the illegal solicitation of political contributions from persons and corporations desiring to have contracts within the Commonwealth and by private persons through collabo-

1. 18 Pa.C.S. § 4113. Misapplication of entrusted property and property of government or financial institutions is defined as follows:
 "A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted."
2. 18 Pa.C.S. § 903.

ration with government employees, to obtain by theft and deception public monies, and similar or related crimes involving official corruption." During its investigation, the grand jury probed the disappearance from the Mercer County maintenance garage of a Case hi-lift, owned by Penn-DOT.

On July 17, 1975, the grand jury recommended the indictment of appellant and three other individuals in connection with the hi-lift's disappearance. Only one of the three, Joseph Fontana, whose appeal to this court is filed at No. 603 April Term, 1977, was not a PennDOT employee.

We will first address appellant's contentions regarding the grand jury proceedings and ultimate presentments. Appellant asserts that the petition to convene the grand jury was not legally sufficient, that the court below erred in permitting the petition to be buttressed by an *in camera* hearing, and that his petition to quash should therefore have been granted. In *Commonwealth v. Bestwick*, 262 Pa.Super. 558, 396 A.2d 1311 (1978) this court, evenly divided, affirmed the judgment of sentence of another PennDOT employee whose conviction stemmed from the same investigating grand jury. This author's opinion in support of affirmance addressed the identical issue here raised and determined it adversely to the appellant's position. Our reasoning applies with equal force in the instant appeal.

Appellant maintains that the order authorizing the grand jury's impaneling did not limit the scope of the investigation with the precision and definiteness required, and in fact authorized an investigation broader in scope than the district attorney requested.

The district attorney's petition stated that his office was "conducting an investigation into allegations of the macing of employees of the Pennsylvania Department of Transportation in Mercer County for political donations." The petitioner asserted that some department personnel had extorted funds from individuals seeking contracts with PennDOT, and that some contract awardees were required to return a

percentage of their earnings to PennDOT personnel. Non-PennDOT employees, with the help of supervisory personnel, were believed to have formed a paper corporation to collect fees for work never done. The petition stressed that these were not unrelated incidents, but rather were part of a "widespread and systematic scheme by which a large number of persons ha[d] conspired to obtain money and property for themselves and/or the Democratic Party."

The court's order stated in part:

"The grand jury investigation is necessary to discover what may be criminal acts which seriously affect and injure the public and to obtain evidence leading to the indictment and prosecution of persons who have committed specific crimes within the statutory period and within the jurisdiction of the court. *Such crimes may include: the illegal solicitation of political contributions from persons and corporations desiring to have contracts with in the Commonwealth and by private persons through collaboration with government employees, to obtain by theft and deception public monies, and similar or related crimes involving official corruption.*" (emphasis added).

Appellant cites *Dauphin County Grand Jury Investigation Proceedings (No. 1)*, 332 Pa. 289, 2 A.2d 783 (1938), to support his argument. In that case, the petition referred to eight specific offenses, all tenuously related. The real difficulty in *Dauphin County* was that the court below had not been provided with sufficient specifics of the enumerated crimes to authorize impaneling the grand jury. We have already determined that in the instant case the petition and *in camera* proceeding did provide adequate information upon which to proceed. *Commonwealth v. Bestwick, supra.*

The supreme court did comment in the *Dauphin County* case:

"Furthermore, the court below convened the grand jury 'to investigate and inquire into all matters which may properly come before it, *including the investigation of any other unlawful conduct on the part of any public official or person within the jurisdiction of this Court.* * * * '

The call, in itself, is for an investigation more sweeping and unrestricted than the petition seeks." *Id.*, 332 Pa. at 300, 2 A.2d at 789 (emphasis in original).

The court's order in *Dauphin County* is totally dissimilar to the one in the instant case. The *Dauphin County* order was the broadest possible order that the court could enter, recognizing its jurisdictional limitations. It attempted to embrace any and all unlawful conduct and any and all actors. Such an order could of course provide little guidance to the grand jury, which is to be apprised of the specific area of its inquiry by the court's order.

Instantly, the court did not extend the scope of the requested investigation. Rather, it enumerated crimes that could possibly be uncovered (the same ones specified in the petition) and, in order that that listing not be deemed exhaustive, the court included "similar or related crimes involving official corruption." The purpose of an investigating grand jury is to ferret out crimes not able to be detected otherwise. It is therefore unreasonable to expect either the district attorney or the authorizing judge to specifically enumerate all the criminal actions to be focused on by the grand jury. "Similar" and "related" do not impress us as words of license, but rather necessary qualification. We do not adopt appellant's position that the order exceeded the scope of the petition's request.

Appellant next asserts that the grand jury presentment and resulting indictments should have been quashed because investigation of the hi-lift's disappearance was outside the scope of the grand jury's authorized review.

Appellant cites *Commonwealth v. Soloff*, 175 Pa.Super. 423, 107 A.2d 179 (1954). In that case, a grand jury had been impaneled to investigate "conspiracies to cheat and defraud the City of Pittsburgh of its properties, supplies and labor," connivance of officials in the operation of "gambling establishments, lotteries and houses of prostitution," and acceptance by officials and employees of bribes. *Id.*, 175 Pa.Super. at 425, 107 A.2d at 179. The appeal, however, dealt with a case of "overzealous law enforcement or police

brutality." *Id.*, 175 Pa.Super. at 427, 107 A.2d at 180. A defendant who had been tried and convicted on a charge of solicitation to commit sodomy was beaten by several officers when they arrested him. There, the court properly determined that the grand jury had gone beyond the "orbit of [its] authority . . . [as] limited by the scope of the petition which caused the impaneling of such jury." *Id.*, 175 Pa.Super. at 426, 107 A.2d at 180. *Soloff* is vastly different from the case before us.

In the instant case, the petition stated that the crimes enumerated therein were "not isolated incidents, but rather [were] part of a widespread and systematic scheme by a large number of persons [who had] conspired to obtain money and property for themselves."

The petition defined the scope of the requested grand jury:

"The scope of the grand jury investigation requested by your petitioner would include the specific crimes alleged in this petition which are supported by information gathered by the 'Gleason Committee' and other legislative and executive committees and departments. Said information indicates the existence of a system of related crimes and a conspiracy to cover up said crimes."

The disappearance of the hi-lift fits precisely within the grand jury's scope of inquiry. It is a clear instance of "persons hav[ing] conspired to obtain money and property for themselves."

■ Appellant's final contention with regard to the grand jury proceeding is that the indictment should have been quashed because he was not afforded a preliminary hearing. Our supreme court answered this assertion in *Commonwealth v. McCloskey*, 443 Pa. 117, 140, 277 A.2d 764, 776 (1971), wherein it stated, "An investigating grand jury presentment is a constitutionally permissible and reasonable alternative to a preliminary hearing."

■ Appellant next argues that the evidence presented was not sufficient to warrant his conviction. Viewing the

evidence in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Thomas*, 465· Pa. 442, 350 A.2d 847 (1976), the following was adduced at trial. Appellant, the maintenance superintendent for the Penn-DOT District 1–4 office in Mercer County, was responsible for all county highway maintenance activities. A 1962 Case hi-lift, Department Number 024–1054, originally purchased in 1962 for $8,819.00, was one of approximately one hundred pieces of heavy equipment assigned to the Mercer garage. In April 1974, appellant signed a department form, Form 838, recommending condemnation and sale of the subject hi-lift. The recommendation emanated from an inventory conducted by Scott Braine, the Mercer garage head mechanic, and Harry Murray, the Mercer garage foreman. The form indicated that repairs would cost approximately $8,945.88; $7,231.88 for parts and $1,714.00 for labor. There was testimony that this estimate was grossly inflated.

The request was forwarded to the district office for approval and was ultimately sent to the Harrisburg office. There, the machine was not authorized for sale, due in part to the very high cost of replacement, but on May 13, 1974, was authorized for dismantling. The hi-lift's engine was to· be removed and sent to Harrisburg, and other parts would then be used by the Department for salvage. No fuel, oil, or employee time could thereafter be charged to that piece of equipment.

On August 22, 1974, appellant sent a letter to the Harrisburg office stating that the hi-lift was dismantled. A subsequent letter, dated December 18, 1974, and also authored by appellant, verified that the machine was dismantled and that all workable parts were salvaged. On December 24, 1974, appellant ordered the hi-lift, still intact, to be transferred a distance of approximately 20 miles to Donnelly's grocery store on Route 18 and parked on the lot there. Another PennDOT mechanic, Mr. George Magee, testified that he was travelling east on Interstate 80 on December 24th, and that he overheard a radio transmission from appellant to the lo-boy that was transferring the lift. Ap-

pellant stated that the lift was to be left somewhere on Route 18 and that someone would meet them to give more complete instructions. Mr. Paul Rogozan, another PennDOT employee, arrived at Donnelly's shortly after the two employees transporting the lift arrived. Mr. Rogozan approved the parking lot location of the lift. Mr. Donnelly, owner of the grocery, testified that he was not asked for permission to park the hi-lift in his lot. None of the individuals who worked in repairing the lift that day or in transporting it accurately charged time on their time cards to the piece of equipment in question. The lift was subsequently sold by Mr. Rogozan to Mr. Joseph Fontana, and then to the American International Coal Company, Inc. It was ultimately recovered by Pennsylvania State Police on July 14, 1975, in a garage in New Alexandria, Westmoreland County.

In *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977), the supreme court set forth the standard for appellate determination of sufficiency of evidence in cases in which the Commonwealth has relied solely upon circumstantial evidence.

"In determining the sufficiency of the evidence the test is whether, accepting as true all of the evidence of the Commonwealth and all reasonable inferences arising therefrom, upon which, if believed, a finder of fact could properly have based its verdict, such evidence was sufficient in law to prove the elements of the crime in question beyond a reasonable doubt.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Moreover, it is not necessary that each piece of evidence be linked to the defendant beyond a reasonable doubt. It is only necessary that each piece of evidence include the defendant in the group who could be linked while excluding others, and that the *combination of evidence* link the defendant to the crime beyond a reasonable doubt. Restated, the facts and circumstances need not be absolutely incompatible with de-

fendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.' " *Id.,* 412 Pa. at 149–50, 371 A.2d at 478 (citations omitted) (emphasis in original).

Under the facts recounted, we find appellant's assertion of insufficient evidence a purely specious one.

 Appellant's final contention is that the court below erred in failing to grant his motion for severance made during the course of the trial. In conjunction therewith, appellant agreed to waive his right to assert later violation of his speedy trial rights and his right against double jeopardy. Counsel alleges that appellant's due process rights were violated and that he was subjected to an inherently prejudicial trial. Appellant's arguments center around his co-defendant Fontana's trial counsel, Mr. James Joseph.

It was developed at trial that Mr. Joseph was present when the hi-lift was being prepared for transport to Mr. Levitt, who purchased the lift from Fontana. Mr. Levitt endorsed a check for $2,500 and delivered it to Attorney Joseph's office, and Mr. Joseph ultimately filled in the payee's name.[3]

There was also testimony that one evening a conference occurred in Mr. Joseph's office, at which Messrs. Levitt, Reed and Fontana were present. There was no evidence that any false testimony was contemplated during that meeting.

The granting of a severance is a clear area of judicial discretion. *Commonwealth v. Shriner,* 232 Pa.Super. 306, 332 A.2d 501 (1974). Further, the burden is on appellant to show that there was substantial prejudice to him as a result of the refusal to sever, *Commonwealth v. Shriner, supra.* Appellant asserts the possibility of prejudice, but our review of the record reveals none. The fact that a co-defendant

---

**3.** There was testimony that Mr. Fontana owed money to Attorney Ewing, the designated payee, for legal services not related to the subject matter of this appeal.

may have had a better chance of being acquitted if tried separately is not sufficient to justify a severance. *United States v. Clark,* 398 F.Supp. 341 (E.D.Pa.1975).

We note first that appellant's involvement in this transaction was completely remote from any encounters with Attorney Joseph. The jury was adequately instructed to consider the defendants, and testimony on the involvement of each, separately. The verdicts demonstrate that it in fact had no difficulty in sifting the evidence and determining the guilt or innocence of each defendant separately. Mr. Braine and Mr. Murray were acquitted of all five charges against them.[4] Mr. Fontana was found guilty of all counts except theft by unlawful taking.[5] Appellant was convicted of only misapplication of entrusted or government property and conspiracy.

Although appellant's brief makes a noteworthy attack on the effectiveness of Mr. Fontana's trial counsel, he has no standing to advance the argument of ineffective assistance of co-defendant's counsel. As for his own right to due process and a fair trial, we cannot find any prejudice to appellant which would warrant a conclusion that he was deprived thereof and thereby entitled to a new trial.

Judgment of sentence affirmed.

SPAETH, J., files a concurring statement.

CERCONE, President Judge, dissents.

JACOBS, former President Judge, WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

4. Mr. Braine, Mr. Murray, and appellant were indicted on the same charges, theft by unlawful taking, misapplication of entrusted property, hindering apprehension or prosecution, tampering with public records or information, and conspiracy.

5. Mr. Fontana was charged with theft by unlawful taking, misapplication of entrusted or government property, conspiracy, theft by receiving stolen goods, and tampering with a witness.

Concurring statement by SPAETH, Judge:

I join in the majority's opinion, but on the issue of whether a preliminary hearing was required, I adhere to the opinion I expressed in *Commonwealth v. Bestwick*, 262 Pa.Super. 558, 396 A.2d 1311 (1978) (Opinion in Support of Affirmance by SPAETH, J.)