401 A.2d 1361

**COMMONWEALTH of Pennsylvania,**

**v.**

**Joseph FONTANA, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided April 19, 1979.

Petition for Allowance of Appeal Granted Oct. 3, 1979.

388

Irving M. Green, New Kensington, for appellant.

David B. Douds, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal arises from imposition of sentence following appellant's conviction by a jury of tampering with a witness,[1] receiving stolen goods,[2] misapplication of entrusted property,[3] and criminal conspiracy.[4] On appeal, appellant contends that trial counsel was ineffective[5] and that there was insufficient evidence to support his convictions. We find these assertions to be without merit, and we accordingly affirm.

Appellant's indictment grew out of a grand jury investigation of the Pennsylvania Department of Transportation (PennDOT), District 1-4, authorized by the Honorable John Q. Stranahan on June 4, 1975, to inquire into "the illegal solicitation of political contributions from persons and corporations desiring to have contracts within the Commonwealth and by private persons through collaboration with govern-

1. 18 Pa.C.S. § 4907.

2. 18 Pa.C.S. § 3925.

3. 18 Pa.C.S. § 4113.

4. 18 Pa.C.S. § 903.

5. When appellate counsel is a different attorney from the one who represented the appellant at trial, ineffectiveness of trial counsel must be raised on direct appeal unless the grounds for the claim do not appear in the record. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975); *Commonwealth v. Tolbert*, 246 Pa.Super. 23, 369 A.2d 791 (1977).

ment employees, to obtain by theft and deception public monies, and similar or related crimes involving official corruption." [6]

The grand jury returned presentments on July 17, 1975, recommending the indictments of appellant and three other persons allegedly involved in the disappearance of a piece of PennDOT equipment, a Case hi-lift, in 1974–75. The others charged were Clarence Braine, the head mechanic in the Mercer County PennDOT garage, Harry Murray, the Mercer County garage foreman, and Joseph Iacino, maintenance superintendent. Appellant, an independent contractor, was therefore the only one of the group indicted in this matter who was not a PennDOT employee.

First, viewing the evidence in the light most favorable to the Commonwealth, as we must, *Commonwealth v. Thomas,* 465 Pa. 442, 350 A.2d 847 (1976), we will address appellant's sufficiency arguments. The following was adduced at trial. In April 1974, Joseph Iacino, the PennDOT maintenance supervisor of Mercer County, one of the seven counties in District 1–4, prepared a department form recommending condemnation and sale of a hi-lift, Department Number 024–1056. Harry Murray, the Mercer garage foreman, was directly responsible to Mr. Iacino, and Scott Braine, the head mechanic at the Mercer facility, was directly responsible to Mr. Murray. The Harrisburg office determined that the hi-lift should be dismantled and sold or used for parts, and Mr. Iacino was so informed by letter on May 9, 1974. Subsequent correspondence from Mr. Iacino indicated that the equipment had been dismantled and that all workable parts were salvaged. In fact, the hi-lift was never dismantled, but in December 1974, Mr. Braine ordered that the

6. In *Commonwealth v. Bestwick,* 262 Pa.Super. 558, 396 A.2d 1311 (1978), this court, evenly divided, upheld the propriety of Judge Stranahan's convening of the grand jury. *See also Commonwealth v. Iacino,* 265 Pa.Super. 375, 401 A.2d 1355 (1977). In *Iacino,* we further upheld the grand jury proceedings by determining that the subject matter of that and the instant appeal, a stolen PennDOT hi-lift, was within the scope of the grand jury's investigative powers. In any event, appellant in the instant case does not question either the propriety or the scope of the grand jury's proceedings.

hi-lift be taken by one of the mechanics to Donnelly's, a nearby grocery, and parked in the lot.

According to Robert Ryder, the mechanic who made the delivery, one Rags Rogozan, another PennDOT employee, stopped at Donnelly's while Mr. Ryder was there and approved the location of the lift. Several individuals then testified for the prosecution that they did not see the lift again for several months.

Appellant had constructed the Sheraton Inn in West Middlesex, where Commonwealth witnesses testified the hi-lift was next seen in January 1975. The hi-lift was sold to appellant by Rags Rogozan for approximately $400 and cancellation of an estimated $500 gambling debt. Mr. Russ Reed, who did some work for appellant and was a frequent visitor at the Sheraton, offered to paint the hi-lift, which was accomplished within several days of its purchase; a primer color replaced the PennDOT yellow. There was testimony that appellant knew that Mr. Rogozan was a PennDOT employee and that he was aware that the lift was scrapped by the Department.

Then in May, the lift was again sold, this time by appellant to the American International Coal Company, Inc., for $2,500. Although appellant requested cash, Stephen Levitt, the company's president, explained that the payment would have to be made by check. When appellant ultimately learned that a PennDOT hi-lift was the subject of a search and federal investigation, he contacted Mr. Levitt to suggest that the hi-lift be disposed of in some manner. He also requested the return of the cancelled check and suggested that the bank's microfilm of the check be obtained and destroyed. The hi-lift was ultimately seized in a garage located in New Alexandria, Pennsylvania, in the possession of the coal company.

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. [citations

omitted]." *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975).

■ Appellant is first charged with tampering with a witness, James Joiner, a former employee who assisted in transferring the lift to the American International Coal Company's garage. Appellant argues that Mr. Joiner had not yet been subpoenaed to appear nor informally questioned by anyone in connection with any judicial proceeding, ongoing or pending, at the time when appellant allegedly attempted to influence his potential testimony. To the contrary, although we find Mr. Joiner's testimony to be quite confused, it is clear that whether Mr. Joiner was specifically told not to testify is not the determining factor. Mr. Joiner several times stated that during a telephone conversation initiated by appellant in July 1975, after Mr. Joiner's employment for appellant had terminated, appellant did ask him if he intended to testify, and told him that if anyone asked about appellant's construction machinery, Mr. Joiner should tell them only about the backhoe, a second piece of equipment owned by appellant. Mr. Joiner's testimony indicates that regardless of whether he was directly told to refrain from testifying, he clearly inferred this to be appellant's intended message. It is not required under 18 Pa.C.S. § 4907 that an investigation be underway or about to commence, but only that the actor "believe" such to be "pending or about to be instituted." Appellant's inquiry, "Will you testify?" is sufficient from which to infer this belief. It was for the jury to determine the witness Joiner's credibility. *Commonwealth v. Usher,* 246 Pa.Super. 602, 371 A.2d 995 (1977).

■ Secondly, appellant questions the sufficiency of the evidence to establish receipt of stolen goods. The offense is defined by 18 Pa.C.S. § 3925(a) as follows:

"[A] person is guilty of theft if he intentionally receives, retains or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

*Commonwealth v. Henderson,* 451 Pa. 452, 304 A.2d 154 (1973), establishes that:

"The crime of receiving stolen goods requires proof that the appellant knew that the property possessed was stolen. Such knowledge on the part of the appellant is an essential element of the crime, in addition to the elements of appellant's possession of the property and the theft of the property prior to appellant's possession.

The element of appellant's guilty knowledge may be established by direct evidence of knowledge or by circumstantial evidence from which it can be inferred that appellant had *reasonable cause to know* that the property was stolen." 451 Pa. at 455, 304 A.2d at 156 (emphasis in original).

It is true that there was no direct evidence that appellant knew that the hi-lift was stolen prior to his purchase of it. It was the Commonwealth's contention that the hi-lift, still painted yellow and bearing PennDOT markings, should have caused appellant to question its sale to him by Mr. Rogozan, a PennDOT employee. The evidence was clear that Mr. Rogozan had no authority to transfer ownership of the equipment to appellant, and that it was therefore in fact stolen. The Commonwealth emphasized the small amount of money which appellant paid for the lift and the fact that he had it put in a garage to be painted on the same day on which it was delivered to him. From these facts, the jury could conclude that appellant either had knowledge or reasonable cause to conclude that the transaction was not wholly aboveboard. We find the circumstantial evidence sufficient to warrant the jury's finding.

■ Misapplication of entrusted property and property of government or financial institutions is defined in 18 Pa.C.S. § 4113(a):

"A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves a substantial risk of loss or detriment to the owner of the

property or to a person for whose benefit the property was entrusted."

The evidence in this case, already recounted, was sufficient from which the jury could conclude that appellant accepted government property from a government employee with knowledge, or reasonable cause to know, of its rightful ownership, and later, at a profit, transferred it to another. The fact that he ultimately encouraged the final purchaser, Mr. Levitt, to conceal it by depositing it in a river lends further support for appellant's conviction on this charge.

Appellant next questions the sufficiency of the evidence to establish his guilt of criminal conspiracy.

The essence of conspiracy is a common understanding or agreement. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976). However, the Commonwealth is not required to establish the existence of a conspiracy by direct proof or an explicit or formal agreement. *Commonwealth v. Roux, supra; Commonwealth v. Clark*, 256 Pa.Super. 97, 389 A.2d 619 (1978). The relationship and conduct of the parties and the circumstances surrounding their activities may support the inference that a conspiracy existed. *Commonwealth v. Perdie*, 249 Pa.Super. 406, 378 A.2d 359 (1977).

In the instant case, the Commonwealth relied upon circumstantial evidence to establish appellant's conspiratorial guilt. Appellant and Mr. Rogozan were socially acquainted for some time. Appellant, involved in the construction business, did not purchase the hi-lift when Mr. Rogozan first proposed the deal, but did so later for a relatively small sum. The equipment bore PennDOT colors and insignia when delivered to the Sheraton. Appellant immediately had the lift painted, and when he resold it several months later, he sold it for $2,500; approximately $1,600 more than his purchase price. That sale, although consummated by check, was originally proposed by appellant as a cash transaction. There was testimony by Mr. Joiner that when the hi-lift had been loaded onto a truck for transfer to Mr. Levitt, he heard appellant declare as the truck departed, "There was a hot something." Mr. Joiner later testified that he could not recall the exact words. We find this evidence sufficient

from which the jury could infer an understanding between appellant and Mr. Rogozan to fraudulently dispose of government property.

Appellant's second main contention is that he was denied effective assistance of counsel. The facts involved in the resolution of this question are as follows. Mr. Joiner testified that on the day on which he and Russ Reed were moving the hi-lift onto a lo-boy truck at the Sheraton Inn for transport to Mr. Levitt, appellant appeared on the scene. Both appellant and a companion, his attorney, approached the hi-lift, but the attorney returned to their automobile before the men were finished loading the equipment. It was at that point that Mr. Joiner heard reference to something "hot." Later, at side-bar, the lower court judge asked Mr. Joseph, appellant's trial counsel, if he was the attorney to whom the witness referred. Mr. Joseph responded affirmatively.

Later in the trial, Mr. Levitt testified to a meeting in Pittsburgh between appellant, Russ Reed, and himself which occurred after appellant learned that a federal investigation was underway. The trio met outside the Public Safety Building. It was then that appellant requested the return of the canceled check and suggested that Mr. Levitt obtain the bank's microfilm of the check and destroy it. Mr. Reed testified that he would opt to tell all, and at that point, appellant decided to consult with counsel. He telephoned Mr. Joseph, and a conference among the four men occurred immediately in Attorney Joseph's office, just several blocks from the Public Safety Building. It is appellate counsel's assertion that the testimony of both Messrs. Joiner and Levitt was so damaging that Mr. Joseph should have removed himself from the case in order to take the witness stand and rebut any inference that appellant was involved in the hi-lift's theft or any attempted coverup.

The law is clear that it is the defendant's and his counsel's decision whether the attorney should refrain from testifying so that he can continue to represent the defendant. *Commonwealth v. Gatewood*, 221 Pa.Super. 399, 293 A.2d 80 (1972).

When the court below first became aware of Attorney Joseph's involvement in this case, counsel was questioned whether he wished to testify or whether his client wished for him to testify, to which he responded negatively. The court then brought Canon 5 of the Code of Professional Responsibility to Attorney Joseph's attention, particularly Ethical Consideration 5–10, which provides in part:

"It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. . . . In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement."

Counsel opted to remain in the case.

*Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1976), clearly sets forth the test for effectiveness of counsel:

"[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis."

*Id.*, 427 Pa. at 604–05, 235 A.2d at 352–53.

Ineffectiveness will not be found "unless [the court determines] that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Id.*, 427 Pa. at 603, n. 8, 235 A.2d at 353, n. 8.

A careful reading of the record convinces us that counsel very effectively cross-examined Mr. Joiner, who finally admitted that although he thought the word "hot" was uttered

by appellant, he could not say with certainty in what context the word was used or that appellant was in fact the speaker. He did testify that the attorney was, by that time, seated in an automobile out of hearing distance. Clearly, Attorney Joseph's testimony could have added nothing to the jury's understanding of this incident, and, at most, would have been cumulative.

As far as Mr. Levitt's testimony is concerned, it was clearly emphasized that the discussion in Mr. Joseph's office concerned Mr. Levitt's anticipated testimony, should he be called by the grand jury. Mr. Levitt testified on cross-examination that there was no effort to falsify facts at Attorney Joseph's office, and that nothing was revealed at the meeting to indicate that appellant knew at the time he sold the hi-lift to Mr. Levitt, that it was stolen. A careful reading of Mr. Reed's and appellant's testimony regarding the meeting with trial counsel reveals no material discrepancies. Consequently, Mr. Joseph's testimony would again be merely cumulative.

Appellant does not assert that trial counsel conducted himself at trial in such a manner that he attempted to exonerate himself and to harm appellant. Appellant points to no place in the record in which Mr. Joseph failed, to appellant's prejudice, to cross-examine vigorously or defend appellant. Finally, appellant makes no assertion that Attorney Joseph was involved in the criminal conspiracy. Since appellant directs us to no new evidence which Attorney Joseph might have presented as a witness, and his proposed testimony would then have been merely cumulative, we find that counsel's decision to forego testifying in favor of defending appellant had a reasonable basis. Indeed, counsel was most likely in the best position to evaluate and present appellant's case.

In conclusion, we note that at no point does appellant contend that he requested counsel to be a witness or that counsel refused to do so. Appellant was represented by counsel of his choice, who vigorously pursued his defense. We find no ineffectiveness of counsel.

Judgment of sentence affirmed.

CERCONE, President Judge, files a concurring and dissenting statement.

JACOBS, former President Judge, WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

Concurring and dissenting statement by CERCONE, President Judge:

I concur in the result that the evidence is sufficient to convict appellant for receiving stolen goods. I dissent from the conclusion that the evidence is sufficient to support a conviction for criminal conspiracy.