380 A.2d 802

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Andrew GOOSBY.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided Dec. 2, 1977.

328

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellant.

James J. Phelan, Jr., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

Appellee was convicted in Municipal Court of possession of an instrument of crime generally,[1] reckless endangerment,[2] and carrying a firearm on public property in Philadelphia.[3] An appeal was taken and a trial *de novo* took place in the Court of Common Pleas before a jury with the Honorable Curtis C. Carson, Jr., presiding. At the conclusion of the Commonwealth's case, demurrers to all three charges were overruled. The following day, Judge Carson, *sua sponte*, reconsidered his ruling and sustained the demurrers on all three counts. The Commonwealth subsequently appealed. We reverse.

On appeal from the sustaining of a demurrer to the Commonwealth's evidence, we must review the evidence in a light most favorable to the Commonwealth together with all inferences reasonably drawn therefrom. *Commonwealth v. Gladden*, 226 Pa.Super. 13, 311 A.2d 711, *allocatur refused*, 226 Pa.Super. *xxix* (1973).

In so viewing the evidence, the jury would have been warranted in finding the following facts from the Commonwealth's case. Early in the evening of October 2, 1975, appellee's son notified Philadelphia Housing Authority Police Officers that he had seen his father loading a gun outside the apartment of appellee's estranged wife. The son feared for his mother's safety. Two officers, Fulginiti and Neal, raced on foot to the 1000 block of Brown Place, which is located in a public housing project owned by the Philadelphia Housing Authority. A crowd of fifteen to twenty people had gathered outside 1009 Brown Place, the address

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 907(a) (1973).

2. "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 2705 (1973).

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 6108 (1973).

of the apartment where appellee's wife resided. Officer Neal saw appellee and his wife walking up the sidewalk ten or fifteen feet from the entrance to the apartment building. Appellee continued up the walk and reached the entrance, whereupon he turned around and pointed a gun at the two officers, while holding his wife directly in front of himself. Both officers testified that they heard several "clicking sounds" emanating from appellee's direction. These sounds were characterized as similar to the noise of a trigger of a gun being pulled. Appellee then pushed his wife forward out of the doorway and fled up the interior steps of the building to his wife's apartment. Officer Neal gave chase and apprehended appellee as appellee exited the front bedroom. Officer Neal confiscated a gun found lying on the bed, along with four spent cartridges and a live cartridge that had misfired. The Commonwealth also produced evidence to show that appellee did not have a license to carry a firearm and that Mrs. Goosby did not keep a firearm in her apartment.

■ The demurrer to the § 907(a) charge was sustained because the trial judge believed that since § 907(b) expressly deals with *concealed* firearms, § 907(a) did not include an openly carried firearm as an instrument of crime under that section. This issue was squarely faced by this Court in the case of *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39, *allocatur granted*, 238 Pa.Super.Ct. *xlii* (1975). Although Judge Carson was aware of this decision, he chose to disregard the ruling of the majority of this Court which said that § 907(a), as well as § 907(b), does apply to the possession of firearms. We are thus constrained to reverse the order sustaining the demurrer.

■ The demurrer to the § 2705 charge, reckless endangerment, was sustained because the trial judge believed that appellee should have been indicted either for simple assault [4]

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 2701 (1973).

or aggravated assault.[5] Although there is little supportive reasoning for this ruling in the lower court's opinion, Judge Carson's statements at pages 240–252 of the record outline his position. The District Attorney indicated that appellee was indicted under § 2705 because the Commonwealth was not confident that the requisite *mens rea* could be made out for a charge of assault or aggravated assault. To this explanation the trial court responded that reckless and negligent conduct is also encompassed by the assault and aggravated assault sections and thus appellee should have been indicted under those sections. The problem with this reasoning is that §§ 2701 and 2702 apply to reckless conduct only if there is *actual bodily injury caused* by the conduct.[6] In order to convict of assault or aggravated assault when no injury is sustained, an attempt must be shown, which requires the showing of intent under § 901 of the Crimes Code.[7] Since the victims (Officers Neal and Fulginiti) sus-

---

5. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 2702 (1973).

6. Section 2701 provides that:
   A person is guilty of assault if he:
   (1) attempts to cause or intentionally, knowingly or *recklessly causes* bodily injury to another;
   (2) *negligently causes* bodily injury to another with a deadly weapon; or
   (3) attempts by physical menace to put another in fear of imminent serious bodily injury. (Emphasis added.)
   Section 2702 provides that:
   A person is guilty of aggravated assault if he:
   (1) attempts to cause serious bodily injury to another, or *causes such injury intentionally, knowingly or recklessly* under circumstances manifesting extreme indifference to the value of human life;
   (2) attempts to cause or intentionally, knowingly or *recklessly causes* serious bodily injury to a police officer making or attempting to make a lawful arrest;
   (3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer making or attempting to make a lawful arrest; or
   (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon. (Emphasis added.)

7. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 901 (1973).

tained no bodily injury in this case, and there was some question concerning the existence of the required *mens rea* under §§ 2701 and 2702, appellee was properly charged with reckless endangerment and the demurrer should have been overruled.[8]

█ The third and final charge to which a demurrer was sustained was carrying a firearm on public streets or public property in Philadelphia,[9] without a license to do so. The lower court believed that the testimony regarding this charge was inconsistent, and that to allow the matter to go to the jury would permit conjecture. To so rule strips the Commonwealth of the benefit of the reasonable inferences to which it is entitled. Officer Neal testified that he saw appellee walking up the sidewalk to the apartment building at Brown Place. Officer Fulginiti testified that he first saw appellee standing in the entranceway of the apartment building, and had not seen appellee on the sidewalk. We do not believe this testimony is conflicting concerning the issue of whether or not appellee was present on the sidewalk leading up to the apartment building. Fulginiti did not say appellee was not on the sidewalk. The jury certainly would have been entitled to conclude from Neal's testimony that appellee was indeed present with a firearm on that sidewalk.

Although not treated in the lower court opinion, the reason given at trial for sustaining the demurrer appears at pages 232–235 of the record. At that point the trial judge ruled that assuming appellee was in possession of a firearm while on the sidewalk leading up to the apartment building, he was not on "any public property." We disagree. There is no definition of the phrase "any public property" either in § 6108 or anywhere else in the Crimes Code. Hence the phrase must be interpreted using its common and approved

---

**8.** Although the reasons are not relevant for our purposes, at page 245 of the record the District Attorney explained why he was not confident about proving the *mens rea* element under the assault sections.

**9.** Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 6108 (1973).

usage.[10] The following definition appears in *Black's Law Dictionary*, (4th ed. 1968):

> "Public property. This term is commonly used as a designation of those things which are publici juris, (q. v.,) and therefore considered as being owned by 'the public,' the entire state or community, and not restricted to the dominion of a private person. It may also apply to any subject of property owned by a state, nation, or municipal corporation as such."

As can be seen from this definition, "public property" is used in two senses. In one sense the term may refer to the character of the use of the property, who has access to the property, and whether or not private individuals have greater dominion over the property than the general public. In another sense, the term reflects the character of ownership of the property.

The buildings comprising the Brown Place apartments, as well as the ground and sidewalks surrounding them, are unquestionably public property in the second sense, that of ownership. The Philadelphia Housing Authority is a public body, created for the public good at public expense, in order to serve a public purpose. *See* Housing Authorities Law, Act of May 28, 1937, P.L. 955, § 1, 35 P.S. 1541 *et seq.* (1964). The funds used to acquire the land and construct the buildings such as those at Brown Place are public funds.

In regards to the first sense of the word earlier alluded to, whether or not the housing project wherein Brown Place is located is public property becomes less clear. The apartments themselves when leased to the tenants cease to become public property in the sense that they are the dwellings of the tenants. Although ownership remains public, the tenant exercises dominion over the apartment itself, and public access to the apartment is nonexistent. Had appellee possessed a firearm only inside the apartment at Brown Place, we undoubtedly would hold that for the purpose of § 6108, the "use" interpretation of "public property"

10. Act of November 25, 1970, P.L. 707, No. 230, added December 6, 1972, P.L. 1339, No. 290, § 3, 1 P.S. § 1903 (1977).

would take precedence over the fact that in the sense of ownership, the property was still very much public. Under the facts of this case, however, we believe that both meanings of the term "public property" lead to the conclusion that the sidewalk was indeed "public property" under § 6108.

Appellee had no exclusive right to use the sidewalk. The sidewalk was there for the use of any member of the public choosing to approach Brown Place for a legal purpose. Certainly, any member of the housing project "public" was entitled to use the sidewalk. Appellee had no right or authority to restrict the use of the sidewalk by persons other than himself. In fact, appellee was not even a resident of Brown Place and his right to use the sidewalk was only as great as other members of the public.

Since the property in question was owned by a public entity, since the sidewalk in question was used by members of the public as well as the project residents, and since no private individual or group exercised dominion over the sidewalk, we believe that it was and is "public property" under the meaning of § 6108. Consequently, the demurrer was improperly sustained.

Order reversed.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., dissents, based on his dissenting opinion in *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39 (1975).

SPAETH, Judge, concurring:

In *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39 (1975) (Hoffman, Cercone, and Spaeth, JJ., dissenting), this court divided on the meaning of the phrase "instrument of crime" in 18 Pa.C.S. § 907(a), the dissenting opinion stating that "§ 907(a) does not apply to weapons." *Id.* at 185, 353 A.2d at 43. Although I joined Judge Hoffman's dissent in *McNear*, I join the majority here.

In *McNear* the defendant only possessed an *un* concealed pistol, which he dropped upon seeing a police officer. Accordingly, he could not be found guilty under § 907(b), which requires proof that the "weapon [was] concealed." In concluding that neither could the defendant be found guilty under § 907(a), the dissenting opinion did consider, by comparing § 907 to § 908, that a pistol may serve a lawful as well as an unlawful purpose. From this it followed that a pistol cannot be said to be "[some]thing specially made or specially adapted for criminal use", which is the first of the two definitions of "instrument of crime" in § 907(c). The dissenting opinion did not, however, have the occasion to consider whether a pistol may be an instrument of crime within the second definition in § 907(c), that is, "[some]thing commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses . . . ."

I do not regard as beyond judicial notice the fact that a pistol *is* "commonly used for criminal purposes"; and here the evidence that appellee used his pistol in an attempt to fire on police officers was sufficient to show that he possessed it "under circumstances not manifestly appropriate for lawful uses." Accordingly, I agree that the demurrer should have been denied. (I also agree with the majority's discussion of the demurrers to the second and third counts.)