461 A.2d 1281

**COMMONWEALTH of Pennsylvania**

v.

**Thaddeus FORD, Appellant.**

Superior Court of Pennsylvania.

Submitted March 24, 1983.

Filed June 10, 1983.

284

Martin L. Trichon, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

After a bench trial before Judge Goldman of the Court of Common Pleas of Philadelphia County, the appellant, Thaddeus Ford, was adjudged guilty of Aggravated Assault,[1] Attempted Murder,[2] Criminal Conspiracy,[3] Recklessly Endangering Another Person,[4] Carrying a Firearm on a Public Street or Public Property in Philadelphia,[5] Carrying a Firearm Without a License [6] and Possession of an Instrument of

1. 18 Pa.C.S.A. § 2702.

2. 18 Pa.C.S.A. §§ 901 & 2502.

3. 18 Pa.C.S.A. § 903.

4. 18 Pa.C.S.A. § 2705.

5. 18 Pa.C.S.A. § 6108.

6. 18 Pa.C.S.A. § 6106.

Crime.[7]  Following the denial of post-trial motions, appellant was sentenced: 1) five to ten years for Criminal Conspiracy; 2) two and one-half to five years for Possession of an Instrument of Crime, which was to run concurrently with the Conspiracy term; 3) two and one-half to five years for Carrying a Firearm Without a License, which was to run consecutively to the Possession of an Instrument of Crime sentence but concurrently with the Conspiracy sentence; and 4) five to ten years for Attempted Murder, which was also ordered to run consecutively to the Conspiracy sentence.  No sentence was imposed for the convictions of Aggravated Assault and Recklessly Endangering Another Person.  This appeal followed.  We vacate and remand for proceedings consistent with this Opinion.

The facts, viewed in a light most favorable to the verdict winner, the Commonwealth here, *Commonwealth v. Young*, 446 Pa. 122, 285 A.2d 499 (1971), consist of the following: At approximately 8:00 p.m. on the 27th of September, 1980, Kevin Mason summoned Lawrence Brown to the home of Leon Jones in the Point Breeze section of South Philadelphia.  Mr. Brown made his way to the Jones' residence on his ten-speed bicycle.  En route, Brown met the appellant, who was in Mason's company, and the trio entered the house together.  Once there, Mason borrowed Brown's bicycle and returned fifteen minutes later with Alphonso Beecher.

When Beecher arrived, appellant removed a .32 caliber, blue steel revolver from the back of his pants.  He then handed it to Beecher and remarked, "I can't take this bust." The appellant could not afford "to get locked up" because possession of a firearm would constitute a violation of his existing probation.  As a result, Beecher took the weapon, which Brown recognized as belonging to Mason, and placed it in his own pants.  (N.T. 11–15, 23, 25–27, 29–30).

Mason, Beecher, Brown, Jones and appellant left the house as a group and walked about three blocks to a park located on 23rd Street, between Reed and Dickinson Streets.

7.  18 Pa.C.S.A. § 907.

When the group reached the park, appellant, Mason and Jones separated from Brown and Beecher, both of whom continued to walk for slightly less than half a block. At this point, according to Brown, appellant screamed, "Go ahead. Now." Within the span of a minute, Beecher fired six shots at Brown at point-blank range, hitting him four times in the back. Beecher ran from the scene, while appellant, Mason and Jones walked away.

The shooting that left both of Brown's legs totally paralyzed occurred about twenty minutes after the appellant had handed the .32 caliber weapon to Beecher; the gun Beecher used was the same one that changed possession in Jones' house. (N.T. 17–19, 21, 28, 31–35, 39–41 & 44)

To rebut the Commonwealth's case-in-chief, the appellant produced two witnesses (Patricia Johnson and Sharon Washington) who admitted to conversing with the appellant at the scene, but denied hearing him make any statement even resembling the phrase, "Go ahead. Now" immediately preceding the shooting in question. (N.T. 49–50, 53 & 59)

The trier of fact, after hearing and weighing all of the evidence, found the appellant guilty as charged and sentenced him to the terms of imprisonment recounted *supra*.

On appeal, appellant challenges the sufficiency of the evidence to sustain the verdict and the propriety of "the sentence ... for three (3) different inchoate crimes ... pursuant to 18 Pa.C.S. § 906." (Appellant's Brief at 3)

Since we find that the evidence presented was sufficient to establish appellant's guilt as to some, but not all, of the offenses charged, we will deal with each offense separately for ease of discussion.

To start with, appellant asserts that the evidence produced at trial was insufficient to prove beyond a reasonable doubt that a conspiracy existed. Thus, he contends that he was improperly convicted of Attempted Murder, Aggravated Assault and Recklessly Endangering Another Person under the rubric of a conspirator of Alphonso Beecher and the others to cause injury to the victim, Mr. Brown.

On the question regarding the quantum of proof necessary to establish the existence of a conspiratorial agreement, this Court has stated:

> The essence of conspiracy is a common understanding or agreement. *Commonwealth v. Fontana*, 265 Pa.Super. 387, 401 A.2d 1361 (1979). However, the Commonwealth is not required to establish the existence of a conspiracy by direct proof or an explicit or formal agreement. *Id.* "Indeed, direct proof of an explicit or formal agreement to commit a crime can seldom, if ever, be supplied and it need not be for 'it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence.'" *Commonwealth v. Roux*, 465 Pa. 482, 488, 350 A.2d 867, 870 (1976). The nature of the crime usually makes it susceptible of no other proof than by circumstantial evidence. *Commonwealth v. Evans*, 190 Pa.Super. 179, 154 A.2d 57 (1959), aff'd 399 Pa. 387, 160 A.2d 407 (1960), *cert. denied*, 364 U.S. 899, 81 S.Ct. 233, 5 L.Ed.2d 194, *reh. denied*, 364 U.S. 939, 81 S.Ct. 377, 5 L.Ed.2d 371. *To assist the finder of fact in determining whether a corrupt confederation is present, the relationship and conduct of the parties and the circumstances surrounding their activities can be examined to deduce, inferentially, if a conspiracy exists. Commonwealth v. Fontana, supra.* (Emphasis added)

*Commonwealth v. Tumminello*, 292 Pa.Super. 381, 386, 437 A.2d 435, 437–438 (1981).

■ Additionally, notwithstanding the fact that we are dealing with a situation in which the complained of assault was inflicted by someone other than the appellant, the law in Pennsylvania is settled that each conspirator is criminally responsible for the action of his co-conspirator, provided it is accomplished in furtherance of the common design, "even though one does not perform the immediate act [complained of]." (Citation omitted) *Commonwealth v. Bachert*, 271 Pa.Super. 72, 77, 412 A.2d 580, 583 (1980). Further, our

Supreme Court, in discussing conspiratorial accountability, has held:

When there is evidence that one, who has not struck the fatal blow, has, nonetheless, shared in the criminal intent and the criminal activity, that person has aided and abetted in the commission of the crime and, thus, may be held responsible as an accomplice to another's acts and the consequences of those acts. *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Lowry*, 374 Pa. 594, 98 A.2d 733 (1953). *"The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all."* *Commonwealth v. Strantz*, 328 Pa. 33, 40, 195 A. 75, 79 (1937). (Emphasis added)

*Commonwealth v. Vaughn*, 459 Pa. 35, 39–40, 326 A.2d 393, 395 (1974).

Moreover, as noted in *Commonwealth v. Cox*, 466 Pa. 582, 586, 353 A.2d 844, 846 (1976):

. . . the Commonwealth was not required to establish that appellant was part of the joint effort to cause the death of . . . the victim by direct evidence. This burden may be sustained by means of wholly circumstantial evidence.

Thus, based on the cases just cited, we need to decide if the evidence presented was sufficient to prove, beyond a reasonable doubt, the existence of a conspiratorial agreement so as to hold appellant guilty for the acts of his confederates. In particular, whether the evidence supports a finding that the appellant shared, with his cohorts, the intent specifically necessary to establish the deliberate, willful and premeditated (attempted) killing of the victim, *see Commonwealth v. Bachert, supra,* and whether he "participated in or encouraged the offense." (Citations omitted) *Commonwealth v. Young, supra,* 446 Pa. at 125, 285 A.2d at 500. On this issue, we find the case of *Commonwealth v. Smith*, 490 Pa. 329, 416 A.2d 494 (1980) instructive.

In *Smith,* the appellant engaged in a fistfight with a Leon Mayo. After this dispute terminated, appellant en-

gaged in a second fistfight in the same neighborhood with a Jerry Crew later on that same day. Smith left the scene of the second fight but warned he would return. Thereafter, appellant joined Eugene Blocker and Alan Blocker, as well as several of his other friends, and the group proceeded to Mayo's house. Once there, appellant and his group confronted Mayo, Crew, Darryl Hill and several other youths. Smith and Crew resumed fighting until the police arrived and broke up the argument. After the police left, the fight continued in an alley behind Mayo's house before it was dispersed by Mayo's sister. Then, Mayo's group walked to a nearby high school where they were confronted by Smith and his friends. Smith wanted to continue fighting with Crew, but Mayo informed him that Crew had not come with them because he did not want to fight anymore. With this response, Smith suddenly dashed toward the corner where Eugene Blocker stood and shouted, "now, now" while simultaneously making two downward motions with his right hand, index finger pointing. Thereupon, Blocker fired one shot from a gun that fatally wounded Darryl Hill. The Court in *Smith* found the appellant "legally accountable" for Blocker's act of shooting Hill and, consequently, upheld the convictions of murder of the third degree, criminal conspiracy, possession of an instrument of crime and possession of a prohibited offensive weapon.

Instantly, the appellant proffers the accounting of two female companions, who were present at the scene of the shooting, to dispute the complainant's testimony that he (Ford) shouted, "Go ahead. Now" immediately preceding the firing of the 6 shots by Beecher, 4 of which struck the complainant. Here, as in *Smith*, these conflicts in the testimony were for the fact-finder to resolve, *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978), and, as the record demonstrates, the trial court found that Ford did yell, "Go ahead. Now." We are not persuaded to alter such a determination in the absence of record evidence that it was so unreliable and contradictory that the fact-finder erred in making the finding. *Commonwealth v. Cristina,*

481 Pa. 44, 391 A.2d 1307 (1978); *Commonwealth v. Smith, supra.*

Moreover, in this case, the record not only shows that the appellant was together with his confederates prior to and during the commission of the attempted homicide, but he supplied the assailant (Alphonso Beecher) with the means (a .32 caliber gun) by which to carry out the assault. *See Commonwealth v. Coccioletti,* 493 Pa. 103, 425 A.2d 387 (1981). Also, we have a statement attributed to the appellant ("I can't take this bust") indicating that he was cognizant that a criminal act was about to be perpetrated, yet no evidence that appellant's participation in the conspiracy had terminated. *See Commonwealth v. Laurin,* 269 Pa.Super. 368, 409 A.2d 1367 (1979). Quite the contrary, appellant not only accompanied his cohorts from the residence into the park in an attempt to lull the victim into a false sense of security, but he gave the signal ("Go ahead. Now") to commence firing at the victim. The command was followed by Alphonso Beecher firing six shots, at point-blank range, at the victim's back, four of which found their mark. *See Commonwealth v. Pierce,* 437 Pa. 266, 263 A.2d 350 (1970).

Therefore, based on the actions and statements of the appellant, we hold that the fact-finder was warranted in concluding that the appellant conspired to commit the crime of Attempted Murder. *See Commonwealth v. Smith, supra; Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867 (1976); *cf. Commonwealth v. Davenport,* 307 Pa.Super. 102, 452 A.2d 1058 (1982) (common understanding among alleged co-conspirators is indispensable element of the crime; however, mere association or presence, or knowledge that another proposes to commit an unlawful act, will not establish a conspiracy absent proof that the accused became an active partner in the criminal enterprise with knowledge of the agreement) and compare *Commonwealth v. Bachert, supra.* As for the sufficiency of the evidence to sustain appellant's conviction for Aggravated Assault and Recklessly Endangering Another Person, we do not take issue with this aspect of the trial court's verdict. To

explicate, one is guilty of Attempted Murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act. *See Commonwealth v. Griffin*, 310 Pa.Super. 39, 456 A.2d 171 (1983); *Commonwealth v. Bey*, 306 Pa.Super. 288, 452 A.2d 729 (1982), petition for reargument denied December 13, 1982. The killing, under common law definition, must be unlawful and done with malice aforethought. Malice "consists of an express intent to kill or inflict serious bodily harm, or a 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty' which indicates an unjustified disregard for the likelihood of death or great bodily harm and an extreme indifference to the value of human life." *Commonwealth v. Coleman*, 455 Pa. 508, 510, 318 A.2d 716, 717 (1974), quoting *Commonwealth v. Chermansky*, 430 Pa. 170, 175, 242 A.2d 237, 240–241 (1968).

Next, we see that Aggravated Assault is committed when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under the circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Recklessly Endangering Another Person occurs when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The element of recklessness may be demonstrated by showing that an accused acted in conscious disregard of a substantial and unjustifiable risk that death or serious bodily injury would result, 18 Pa.C.S.A. § 302(b)(3), or it may be established by conduct which is committed intentionally or knowingly. 18 Pa.C.S.A. § 302(e).

■ Consequently, when the Commonwealth established that appellant's co-conspirator Beecher shot and wounded the victim four times in the back, this evidence was sufficient to constitute the commission of an Attempted Murder. *See Commonwealth v. Bey, supra.* However, because the facts that went to establish the commission of such an

offense were exactly the same as those to prove appellant guilty of Aggravated Assault and Recklessly Endangering Another Person, the latter two offenses merged with the Attempted Murder conviction for sentencing purposes. *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104–105, 21 A.2d 920, 921 (1941); *see also Commonwealth v. Nelson*, 452 Pa. 275, 305 A.2d 369 (1973); *Commonwealth v. Wilcox*, 310 Pa.Super. 331, 456 A.2d 637 (1983); *Commonwealth v. Laing*, 310 Pa.Super. 105, 456 A.2d 204 (1983); *Commonwealth v. Walls*, 303 Pa.Super. 284, 449 A.2d 690 (1982), petition for *allocatur* denied January 31, 1983; *Commonwealth v. Williams*, 290 Pa.Super. 209, 434 A.2d 717 (1981). Therefore, instantly, the trial court did not err when it found appellant guilty as charged and imposed no separate sentences for Aggravated Assault and Recklessly Endangering Another Person, since assault and recklessly endangering were, under the facts of this case, a constituent offense of Attempted Murder and, for purposes of sentencing, merged with the more serious offense. *See Commonwealth v. Laing, supra; Commonwealth v. Walls, supra.*

The last two offenses to be dealt with under the caption of sufficiency of the evidence will be appellant's convictions for Carrying a Firearm in a Public Place and Carrying a Firearm Without a License. As for the Possession of an Instrument of Crime conviction, it is more appropriately dealt with in the context of the propriety of the sentence entered in regard thereto, and is discussed *infra.*

▪ All parties agree, including the trial court, that because the Commonwealth failed to introduce any evidence of non-licensure in regard to the offense of Carrying a Firearm Without a License, such a conviction cannot stand. *See Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975) (proof of a license being an essential element of 18 Pa.C.S.A. § 6106, the prosecution's failure to prove such an element necessitated reversal of defendant's conviction for that charge). Our review of the record confirms this point, and, accordingly, we reverse appellant's conviction for this

offense. *See Commonwealth v. Bundridge,* 303 Pa.Super. 267, 449 A.2d 681 (1982).

However, because lack of a license is *not* made an element of the offense of Carrying a Firearm on Public Streets or Public Property in Philadelphia (18 Pa.C.S.A. § 6108), *see Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979); *Commonwealth v. Monroe,* 281 Pa.Super. 328, 422 A.2d 193 (1980), the prosecution's failure to prove licensure is not fatal to appellant's conviction for this offense.

An examination of the evidence reveals that the victim encountered the appellant and Kevin Mason along the way to Jones' house, to which the victim was summoned by Mason, and the three walked into the house together. Within fifteen minutes after entering the premises, appellant removed a pistol from his pants and, while handing it to Alphonso Beecher, remarked that he could not "take this bust." Shortly thereafter, the victim was shot by Beecher in a nearby park at the direction of the appellant. From the complainant's accounting of having met the appellant on the way to the Jones' house,[8] it can reasonably be inferred that appellant possessed the firearm on his person, prior to the shooting, as he walked on a public street in Philadelphia. *See Commonwealth v. Monroe, supra; Commonwealth v. Goosby,* 251 Pa.Super. 326, 380 A.2d 802 (1977). Even if, *arguendo,* the prosecution had not proven that the appellant personally carried the gun in a public place or street, it did introduce substantial evidence that his accomplice, Beecher, carried and used the weapon in a public place pursuant to appellant's direction. We find that such evidence would also justify the trial judge, the trier of fact here, in holding appellant legally accountable for co-conspirator Beecher's carrying and use of the firearm. *See Commonwealth v. Smith, supra.* Although the conviction under Section 6108 withstands the scrutiny of a sufficiency

8. Specifically, appellant testified that he "ran into Thaddeus Ford and Kevin Mason ... on Point Breeze, between Titan and 20th" Streets, while making his way to Leon Jones' house on the 1900 block of Titan Street. (N.T. 13) The three then went to Jones' house.

examination, the sentence will be vacated, nonetheless, because of the interdependence of one sentence upon the other (*see* note 13, *infra*) and the course of action taken by this Court in the succeeding part of this Opinion.

Having dispensed with the sufficiency question, we now turn our attention to appellant's allegation that because his "conviction and sentencing ... on multiple inchoate offenses[, i.e., Attempted Murder, Criminal Conspiracy and Possession of an Instrument of Crime,] ar[o]s[e] out of the commission of one ultimate crime [such] is barred by 18 Pa.C.S.A. § 906 and was therefore improper." (Appellant's Brief at 9) The Commonwealth counters that inasmuch as the appellant "offers this challenge for the first time on appeal[,] ... this claim has been waived." (Commonwealth's Brief at 8) More particularly, the Commonwealth asserts that appellant's failure to attack his *convictions* at the post-trial level, as violative of 18 Pa.C. S.A. § 906 (prohibiting multiple convictions for conduct designed to culminate in the commission of a single crime), precludes him from assailing the legality of his *sentences* now at the appellate level. In support of such an averment, the Commonwealth cites the decisions of this Court in *Commonwealth v. Sheldon Jackson,* 269 Pa.Super. 583, 410 A.2d 854 (1979) and *Commonwealth v. Gadson,* 234 Pa.Super. 648, 341 A.2d 189 (1975), both of which held that an assault on the *convictions* for offenses proscribed by 18 Pa.C.S.A. § 906 (i.e., Criminal Conspiracy, Possession of Instruments of Crime and Prohibited Offensive Weapons,) was waived by appellants' failure to raise the issue in post-trial motions. However, unlike the appellants in *Jackson* and *Gadson,* Ford is questioning the lawfulness of the *sentences* imposed upon his convictions.[9] As such the claim

9. It is true that appellant makes reference in his brief to the propriety of his *convictions* for Attempted Murder, Criminal Conspiracy and Possession of an Instrument of Crime in the context of inchoate offenses, as defined in Chapter 9 of the Crimes Code. *See* 18 Pa.C.S.A. §§ 901, 903 and 907. The Commonwealth seizes on this to label appellant's claim as purely one of questioning his *convictions.* We do not agree, for the Commonwealth gives too narrow a reading to

has not been waived and is properly before us. *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976). This position is consistent with this Court's most recent pronouncement in *Commonwealth v. Von Aczel*, 295 Pa.Super. 242, 441 A.2d 750 (1981) (Commonwealth's Petition for Limited Reconsideration Denied March 17, 1982),[10] wherein we held that a Section 906 sentencing claim, albeit not raised in post-trial motions, was reviewable at the appellate level. We based our decision on the oft-stated precept that: "As to the propriety of inquiring into the validity of the sentence, ... a question as to the legality of the sentence is never waived, despite the fact that it was not raised in the court below. *See Commonwealth v. Walker, [supra]; Commonwealth v. Paige*, 287 Pa.Super. 133, 429 A.2d 1135 (1981); *Commonwealth v. Lawton*, 272 Pa.Super. 40, 414 A.2d 658 (1980)." *Id.* 295 Pa.Super. at 246, 441 A.2d at 752. *Accord Commonwealth v. Riquelmy*, 303 Pa.Super. 403, 449 A.2d 750 (1982); *Commonwealth v. Martinez*, 293 Pa.Super. 260, 438 A.2d 984 (1982); *Commonwealth v. Sandor Turner*, 290 Pa.Super. 428, 432–433, 434 A.2d 827, 830–831 (1981); *Commonwealth v. Herbert Jackson*, 280 Pa.Super. 522, 525 n. 4, 421 A.2d 845, 846 n. 4 (1980); *Commonwealth v. Edward Turner*, 265 Pa.Super. 486, 488–489, 402 A.2d 542, 543–544 (1979).

In fact, "[t]he illegality of sentence is not a waivable matter and may be considered by the appellate courts of the Commonwealth *sua sponte.*"[11] (Citations omitted) *Com-*

appellant's position. Rather, we interpret appellant's argument as one alleging that the trial court erroneously convicted and sentenced him for three inchoate crimes (*see* Appellant's Brief at 9), the remedy for which is either amending the sentence, vacating the sentence for the lesser offenses, or remanding for resentencing. *See Commonwealth v. Maguire*, 307 Pa.Super. 80, 452 A.2d 1047 (1982); 42 Pa.C.S.A. § 706.

10. It requires mentioning that the Commonwealth's Petition for Reconsideration was limited specifically to whether appellant waived his Section 906 claim, having failed to raise it in post-trial motions.

11. It should be noted that the imposition of duplicitous sentences, which is the case instantly, *see Commonwealth v. White*, 264 Pa.Super. 495, 503 n. 8, 400 A.2d 194, 198 n. 8 (1979), are beyond the power and

monwealth v. Thomas, 291 Pa.Super. 263, 268, 435 A.2d 901, 903 (1981); Commonwealth v. Aeschbacher, 276 Pa.Super. 554, 419 A.2d 596 (1980); Commonwealth v. Phillips, 258 Pa.Super. 109, 392 A.2d 708 (1978) and compare Commonwealth v. Wyant, 254 Pa.Super. 464, 386 A.2d 43 (1978).

Consequently, despite the Commonwealth's argument to the contrary, we hold that the appellant has not waived his attack on the legality of the sentence imposed for Attempted Murder, Criminal Conspiracy and Possession of an Instrument of Crime. See Commonwealth v. Smith, 499 Pa. 507, 454 A.2d 1 (1982). Thus, we find the appellant's convictions for the three aforementioned inchoate crimes to be violative of 18 Pa.C.S.A. § 906, which provides:

A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime.

All three offenses fall within the purview of Chapter 9 of the Crimes Code, the Chapter referred to in Section 906, and it is apparent from our review of the facts that the offenses were perpetrated with one objective in mind—the (attempted) killing of Lawrence Brown. Accordingly, appellant's conviction for the three crimes was improper. Commonwealth v. Von Aczel, supra; Commonwealth v. `Herbert Jackson, supra; Commonwealth v. Tingle, 275 Pa.Super. 489, 419 A.2d 6 (1980); Commonwealth v. Ronald Jackson, 261 Pa.Super. 355, 396 A.2d 436 (1978); Commonwealth v. Crocker, 256 Pa.Super. 63, 389 A.2d 601 (1978); Commonwealth v. Wallace, 235 Pa.Super. 733, 345 A.2d 247 (1975).

In light of the error committed by the trial court, we have the option either to remand for resentencing or amend the sentence directly. Commonwealth v. Von Aczel, supra; Commonwealth v. Sandor Turner, supra; 42 Pa.C.S.A. § 706. Instantly, we think it advisable to vacate the judg-

jurisdiction of the sentencing court and, therefore, can be considered despite our normal rules concerning waiver and sua sponte review. Commonwealth v. Schilling, 288 Pa.Super. 359, 370 n. 15, 431 A.2d 1088, 1093 n. 15 (1981) (citing cases); see also Commonwealth v. Walker, 468 Pa. 323, 330 n. 3, 362 A.2d 227, 230 n. 3 (1976).

298

ments of sentence and remand for resentencing. We do so because: 1) the sentencing court imposed *consecutive* terms of five to ten years imprisonment for Criminal Conspiracy and Attempted Murder, with a concurrent term of two and one-half to five years for Possession of an Instrument of Crime; and 2) the conspiracy and attempt offenses are *each graded felonies of the second degree.* 18 Pa.C.S.A. §§ 901, 903 & 905. The preceding points counsel against our vacating the sentence for either the conspiracy or attempted murder charge without remanding, since such a practice is followed, normally, where we vacate the *concurrent* sentence of a *lesser* offense and let stand the sentence for the *greater* offense. *See Commonwealth v. Kinnon,* 308 Pa. Super. 28, 453 A.2d 1051 (1982); *Commonwealth v. Bey, supra; Commonwealth v. Walls, supra; Commonwealth v. Wanamaker,* 298 Pa.Super. 283, 444 A.2d 1176 (1982) (POPOVICH, J., Concurring Opinion); *Commonwealth v. Von Aczel, supra; Commonwealth v. Sandor Turner, supra; see also Commonwealth v. Franklin,* 306 Pa.Super. 422, 452 A.2d 797 (1982); *Commonwealth v. Cadogan,* 297 Pa.Super. 405, 443 A.2d 1185 (1982). Here, because of the imposition of *consecutive* sentences and the presence of offenses (conspiracy and attempted murder) of *equal grading* (felonies), we think it prudent to vacate and remand, leaving it to the sentencing court to decide which one of the three inchoate convictions to let stand and the sentence to be entered in accordance thereto. *Commonwealth v. Martinez, supra,* 293 Pa.Super. at 262 n. 6, 438 A.2d at 985 n. 6. To do otherwise, as the Commonwealth urges,[12] we believe

12. In its brief, the Commonwealth argues that because "[i]t was the court's intention to sentence [appellant] to a total of ten to twenty years' imprisonment on the major offenses of conspiracy and attempted murder/aggravated assault[,]" and since "[t]his intention may be effected by [our] substituting sentence as to the aggravated assault for that previously tied to the attempted murder[,]" "no remand is necessary." (Commonwealth's Brief at 12–13) We do not accept the Commonwealth's invitation to substitute our judgment for that of the sentencing court, especially in light of the ultimate ruling of this Court as to the judgments of sentence being vacated and the interrelationship of one sentence to the other. *See* note 13, *infra.*

would constitute too much of an intrusion into the bailiwick of the sentencing court in light of the facts here. In other words, given the manner in which the trial court entered its sentence,[13] our reluctance to substitute our judgment for that of the sentencing court (as, for example, to which one of the three inchoate convictions should be affirmed, and, in turn, which sentences should be vacated) is valid. The decision as to which course to follow in regard to the inchoate crimes impacts directly on the manner of sentencing (concurrently or consecutively) as to some of the other offenses, e.g., Carrying a Firearm on a Public Street or Public Property in Philadelphia. *See* note 13, *supra.*

■ As for the Aggravated Assault and Recklessly Endangering Another Person convictions, since no *judgments (sentences)* per se were entered by the lower court because it determined, and rightly so, that these offenses merged for sentencing purposes with the Attempted Murder conviction, we merely hold that the evidence was sufficient to support such *convictions. See Commonwealth ex rel. Holly v. Ashe,* 368 Pa. 211, 82 A.2d 244 (1951) (As is well known, the judgment in a criminal case is the sentence and not the conviction; final judgment in a criminal case means

Also, we note that the trial court admitted to the presence of some confusion on its part as to those offenses for which appellant could be convicted and sentenced *vis-a-vis* those for which such was not the case. Accordingly, it decided to "defer further consideration of these sentencing issues pending guidance from the Superior Court...." (Lower Court Opinion at 7)

**13.** The judgments of sentence ordered by the court consist of:
*Criminal Conspiracy* at Bill No. 631—five to ten years;
*Attempted Murder* at Bill No. 627—five to ten years, to be served consecutively to the sentence at Bill No. 631;
*Possession of an Instrument of Crime* at Bill No. 630—two and one-half to five years, to be served concurrently with the sentence at Bill No. 631;
*Carrying a Firearm in a Public Place* and *Carrying a Firearm Without a License* at Bill No. 629—two and one-half to five years, to be served consecutively to the sentence at Bill No. 630 and concurrently with the sentence at Bill No. 631; and
*Aggravated Assault* at Bill No. 626 and *Recklessly Endangering Another Person* at Bill No. 628—no sentence was imposed for either conviction since the trial court deemed both offenses to merge with the Attempted Murder conviction for purposes of sentencing.

sentence); *Commonwealth v. Maguire,* 307 Pa.Super. 80, 452 A.2d 1047 (1982); 10A P.L.E. Criminal Law § 811 (1970).

However, this determination does not foreclose the lower court from imposing a sentence for either Aggravated Assault or Recklessly Endangering Another Person, *see generally Commonwealth v. Wilcox, supra; Commonwealth v. Laing, supra, if* it decides to issue a sentence for Criminal Conspiracy, as opposed to the Attempted Murder charge.

The prospects that such a sentence may be entered is not violative of one's Fifth Amendment right to be free from being punished twice for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2073, 2076, 23 L.Ed.2d 656 (1969) (double jeopardy protects against: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense). In the case at bar, the fact that there was no initial *sentence* entered for either Aggravated Assault or Recklessly Endangering Another Person, the Constitutional prohibition against altering a *sentence* that results in an increased punishment for the same offense is obviated. *See Commonwealth v. Johnson,* 269 Pa.Super. 122, 409 A.2d 94 (1979); *Commonwealth v. Walter,* 240 Pa.Super. 433, 367 A.2d 1113 (1976); *Commonwealth v. Tomlin,* 232 Pa.Super. 147, 336 A.2d 407 (1975). On this exact subject the Third Circuit Court of Appeals held, in *United States v. Busic,* 639 F.2d 940 (3d Cir.1981), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981), that:

> [W]hen a defendant has been convicted after trial and sentenced under a multi-count indictment and on appeal his conviction and sentence as to certain counts is set aside because such counts enhanced the sentence for the predicate felony which contained its own enhancement provision, the constitutional guarantee against double jeopardy does not preclude vacating the sentence on the predicate felony counts and the imposition of a new

sentence by the trial judge on the remaining counts, which may be greater than, less than, or the same as the original sentence.

*Id.* at 953.

The Third Circuit also stated:

Because defendants' initial composite sentences would not be increased by their analysis on resentencing, the due process protections against vindictiveness alluded to in *North Carolina v. Pearce, supra,* are inapplicable here. Furthermore, because the appeal could not result in a higher sentence than that originally imposed, there could be no deterrent to an appeal. Even if there were, the possibility that a defendant might be deterred from the exercise of a legal right to appeal does not violate the due process clause, *see Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 667–668, 54 L.Ed.2d 604 (1978), or the Double Jeopardy Clause, *see Chaffin v. Stynch-Combe,* 412 U.S. 17, 29, 93 S.Ct. 1977, 1984, 36 L.Ed.2d 714 (1973).

*Id.* at 951 n. 12. *Accord United States v. Henry,* 680 F.2d 403 (5th Cir.1983).

Likewise, in the case *sub judice,* appellant's aggregate sentence on remand will not exceed the original sentence, regardless of whether the term of imprisonment for Aggravated Assault [which cannot exceed 10 years (18 Pa.C.S.A. §§ 2702(a)(1) & 1103(2)) ] or Recklessly Endangering Another Person [imprisonment cannot exceed 2 years (18 Pa.C.S.A. §§ 2705 & 1104(2)) ] may be substituted for the Attempted Murder sentence (i.e., 5 to 10 years).

Thus, based on the record before us, we, as did the Court in *Busic,* need not express any opinion as to whether the new aggregate sentence may be greater than the original sentence. *But see United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (Court held that 18 U.S.C. § 3576, which authorizes the United States to appeal from a sentence imposed by a federal district judge on the ground that the sentence is too lenient and further permits the appellate court to increase the severity of the initial

sentence, violates neither the prohibition against multiple punishments nor the prohibition against multiple trials embodied in the Double Jeopardy Clause of the Fifth Amendment).

Accordingly, the following ruling is made: Judgments of sentence for Attempted Murder, Criminal Conspiracy, Carrying a Firearm on a Public Street or Public Property in Philadelphia, Carrying a Firearm Without a License and Possession of an Instrument of Crime are vacated, and the case is remanded for proceedings consistent with this Opinion. Jurisdiction is relinquished.

JOHNSON, J., files a concurring opinion.

JOHNSON, Judge, concurring:

Although I concur in the majority's determination to vacate the judgments of sentence and remand the instant case to the trial court, I note my disagreement concerning the majority's alternative determination that evidence of co-conspirator Beecher's possession of the weapon can, by itself, support appellant's conviction for carrying firearms in Philadelphia, 18 Pa.C.S.A. § 6108.

My review of *Commonwealth v. Smith*, 490 Pa. 329, 416 A.2d 494 (1980), cited for support by the majority, fails to reveal any specific discussion on the issue of whether the defendant in *Smith* could be held legally accountable for a co-conspirator's *possession of a weapon*, as opposed to the act of shooting the victim. 490 Pa. at 332–334, 416 A.2d at 496. Granted, the court in *Smith* did affirm the defendant's convictions for possession of an instrument of crime and possession of a prohibited offensive weapon. However, the instant case concerns an offense under the Uniform Firearms Act, not a weapons offense in the Crimes Code chapter dealing with inchoate offenses, as found in *Smith.*

I cannot agree that a person can be convicted under 18 Pa.C.S.A. § 6108 for *another's* possession of a weapon by means of an accomplice or conspiracy theory. In my view,

a violation of section 6108 is personal and cannot be imputed to another.