J. S55020/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
   :
   :
   :
v.    :
   :
JOELL HILTON,    :
   :
          Appellant    :    No. 2286 EDA 2015

Appeal from the Judgment of Sentence June 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010193-2014

BEFORE: LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:            **FILED AUGUST 12, 2016**

Appellant, Joell Hilton, appeals from the Judgment of Sentence entered on June 25, 2015, in the Court of Common Pleas in Philadelphia County after he was convicted, following a bench trial, of Aggravated Assault, Carrying a Firearm in Philadelphia, Carrying a Firearm Without a License, and Possessing an Instrument of Crime.[1] After careful review, we conclude that the Commonwealth presented sufficient evidence to support Appellant's convictions. Accordingly, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702; 18 Pa.C.S. § 6108; 18 Pa.C.S. § 6106; and 18 Pa.C.S. § 907 respectively.

The underlying facts, as summarized in the trial court's Pa.R.A.P. 1925(a) Opinion are as follows:

At trial, the Commonwealth introduced evidence that on August 21, 2014, at approximately 11:45 a.m., uniformed Philadelphia Police Officer William Mathieu responded to a radio call of a "person with a gun" at the publicly operating "Chuck's Alibi" family restaurant located at 1001 Cottman Avenue, Philadelphia, PA. Restaurant staff immediately directed Officer Mathieu to a back prep room, where the complainant, restaurant worker, Marad Stafford, sat dazed nursing his bruised left eye with ice. The complainant reported that his sister's boyfriend, whom he knew as "Joell," had threatened him with a gun and struck him multiple times in the face and head in the back room area restricted to employees. Other on scene witnesses reported that [Appellant] fled the restaurant after the unprovoked attack in a Jeep Liberty or Cherokee.

While police officers gathered information at the scene, [Appellant] called the victim's cellular telephone. Officer Mathieu spoke to [Appellant] on this phone and gathered his biographical data. [Appellant] told the officer that he and Marad Stafford argued regarding the whereabouts of Marad's sister and [Appellant's] belongings. [Appellant] denied having or using a gun. After receiving eyewitness information, Officer Mathieu viewed the restaurant's internal surveillance video at the scene. He testified that the video "clearly depicted [Appellant] having a gun, and striking the complainant at least twice. . ." The complainant was transported to Einstein Medical Center for medical treatment of his orbital bone fractures and facial hematoma.

Later, during the afternoon of August 21, 2014, Philadelphia Police Officer McCue, while working plain clothes, set up surveillance near [Appellant's] address. At approximately 3:15 p.m., Officer McCue observed [Appellant] exit the passenger side of a black Chevy Impala occupied by another male and walk towards his residence of 6612 Lynford Street, Philadelphia, PA. When Officer McCue identified himself to [Appellant] and asked him to show his hands, [Appellant] replied that he did not have "his" gun on him. When Officer McCue placed [Appellant] in handcuffs, [Appellant] stated that "he knew what this was about."

At trial, both the victim, Marad Stafford, and his restaurant manager, Christopher Mapp, unequivocally identified [Appellant] as the perpetrator of the unprovoked assault and brandishing of a firearm. From approximately a foot of distance, Mr. Mapp observed [Appellant] "raise a silver pistol with a black handle and point it backwards and then point it to Marad's head." In response, Mr. Mapp immediately ran to retrieve his legitimately owned firearm from his private automobile while calling for police assistance.

Mr. Mapp, an experienced gun owner, testified credibly that he had recognized [Appellant's] firearm to be a Smith & Wesson make or model with a possible .44 caliber snub nose. Mr. Mapp reported that he had observed a black Jeep S.U.V. speeding from the restaurant parking lot immediately after the observed confrontation. He found Marad Stafford in the back room profusely bleeding "from the left side of his face, closer to the eye and on the ground stumbling around like he had a head injury."

Marad Stafford testified that [Appellant], whom he knew as his sister's boyfriend for the preceding year, had walked unannounced into the area restricted to employees where he was working as a prep cook. [Appellant] angrily demanded that Mr. Stafford call his adult sister to return [Appellant's] personal belongings. [Appellant] argued that Marad's sister removed [Appellant's] things and their minor child when she left [Appellant's] residence earlier that morning. [Appellant] threatened Marad Stafford repeatedly and told him that if he "didn't call her that bodies would start dropping." Marad saw [Appellant] reach into his pocket, pull out a silver gun with a black handle, and put it to Marad's temple at least twice as he angrily threatened him. Notably, Mr. Stafford also recalled the feel of hard metal of the gun's barrel against his temple as [Appellant] repeated "he was not playing."

As Marad Stafford attempted to walk away, he felt the blows to his head, and remembered nothing until coworkers revived him. After the police arrived at the restaurant, the victim vaguely recalled receiving a phone call from [Appellant] who claimed that he did not mean to hit him. Marad Stafford was transported via ambulance to Albert Einstein Hospital for emergency treatment for multi-fractured orbital bone and facial lacerations. He

testified that he couldn't see for days and suffered severe headaches. Medical records from Albert Einstein Hospital were introduced which demonstrated injuries of multiple fractures to orbital floor bones and hematomas to his left eye. The Court viewed the photographs depicting the victim's injuries shortly after the assault as well as the permanent scarring on the left side of the victim's face during trial.

The restaurant's internal surveillance black and white filmed video [*sic*] recording had been introduced by the Commonwealth in its case in chief. This video unmistakably corroborated the victim and eyewitness version of the events. The brutality of the attack by the dramatically larger [Appellant] upon the small framed victim was visually and vividly apparent.

Testimony from the police personnel reflected that [Appellant] was not apprehended until many hours later in a different vehicle driven by someone else. There was ample time and opportunity for [Appellant] to dispose of the firearm. No firearm was recovered in any later search of [Appellant's] residence or automobile. [Appellant's] vehicle matching the description had been recovered in a different part of town much later in the investigation.

At trial, [Appellant] testified that he had punched the victim but denied that he used a gun either to threaten or strike the victim. He admitted that he had not been apprehended until many hours later in a different vehicle driven by his friend. [Appellant] claimed he had brought a tool known as a "linkage hammer" into the restaurant with him instead of a gun. He denied placing any weapon against the victim's temple. He acknowledged that he was angry because the victim's sister had left his residence earlier with [Appellant's] property and because the victim refused to capitulate to his demand to divulge the whereabouts of the victim's sister or contact her.

[Appellant] testified that he never reported to the arresting officer that he did not have "his" gun. Rather he claimed that his statement was that he didn't have "a gun." The Court found the [Appellant's] version of events to be self-serving, incredible and substantially contradicted by compelling evidence.

Trial Court Opinion, filed 12/21/15, at 2-6.

Following a bench trial, the trial court convicted Appellant of Aggravated Assault, Carrying a Firearm in Philadelphia, Carrying a Firearm Without a License, and Possessing an Instrument of Crime. The Court sentenced Appellant to an aggregate sentence of three (3) to six (6) years of imprisonment, followed by eleven (11) years of probation.

Appellant filed a timely Notice of Appeal. Appellant timely complied with the trial court's Order to file a Pa.R.A.P. Statement.

Appellant raises the following issues on appeal:

1. Was the evidence insufficient to support the verdict of Aggravated Assault (18 Pa.C.S. § 2702) as the evidence did not establish that the Appellant acted with the specific intent to cause serious bodily injury because he acted in justifiable self-defense?

2. Was the evidence insufficient to support the verdicts for Carrying a Firearm in Philadelphia and Carrying a Firearm Without a License, as the evidence did not establish that Appellant possessed a firearm nor that he possessed a firearm on a public property in Philadelphia?

Appellant's Brief at 4.

Both of Appellant's claims challenge the sufficiency of the evidence presented by the Commonwealth at trial. In reviewing the sufficiency of the evidence, our standard of review is as follows:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Vogelsong***, 90 A.3d 717, 719 (Pa.Super.2014) (internal citations and quotations omitted).

Appellant first avers that the Commonwealth did not present sufficient evidence to overcome his claim of self-defense. Where an accused raises the claim of self-defense pursuant to Section 505 of the Pennsylvania Crimes Code[2], the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. ***Commonwealth v. McClendon,*** 874 A.2d 1223, 1229-30 (Pa. Super. 2005).

The Commonwealth rebuts a claim of self-defense if it establishes at least one of the following beyond a reasonable doubt: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." ***Id***. at 1230 (internal citations and quotations omitted). ***See also Commonwealth v. Burns***, 765 A.2d 1144, 1149 (Pa. Super. 2000);

_____

[2] 18 Pa.C.S. § 505.

(concluding that the Commonwealth must establish only one of these three elements to insulate itself from a claim of self-defense).

The Commonwealth can negate a self-defense claim if it proves the defendant "did not reasonably believe he was in imminent danger of death or great bodily injury and that it was necessary to" use deadly force to save himself from that danger. ***Commonwealth v. Sepulveda,*** 55 A.3d 1108, 1124 (Pa. 2012).

> The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, *bona fide* belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

***Commonwealth v. Mouzon,*** 53 A.3d 738, 752 (Pa. 2012) (internal citations and quotation marks omitted).

As with all credibility determinations, if there are multiple witnesses who provide conflicting accounts of the material facts, it is up to the fact-finder to "reject or accept all, part, or none of the testimony of any witness." ***Commonwealth v. Gonzales***, 609 A.2d 1368, 1370 (Pa. Super. 1992) (citations omitted). Further, "although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim." ***Commonwealth v. Bullock***, 948

A.2d 818, 824 (Pa. Super. 2008) (citation and internal quotation marks omitted). However, self-defense is not disproved merely by a fact-finder's disbelief of a defendant's testimony. *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

At trial, Appellant testified that he acted in self-defense. He stated that the victim said, "[i]f you don't get the 'F' out here, I'll cut you the 'F' up," and "I got something for you. I cut you the [F] up." N.T., 4/23/15, at 79-80. Appellant stated that the victim's words led him to believe that the victim intended to obtain a knife and injure him. Appellant also stated that he was unsure of the victim's intentions when the victim tried to leave the room. *Id.* at 80. Appellant did not testify that he saw a knife or that the victim was ever near a knife. *Id*. Appellant stated that his uncertainty proved that he had acted in self-defense. Appellant's Brief at 13.

The victim testified that immediately upon entering the restaurant, Appellant began verbally threatening him. N.T., 4/23/15, at 29, 38. When the victim failed to comply instantaneously with Appellant's demands, Appellant suddenly "reached into his pocket and pulled out a gun and put it to the side of [the victim's] head." *Id.* at 38. The victim testified that Appellant pulled out his gun before he even had an opportunity to turn and begin his attempt to flee. *Id*. at 31, 38, 40. The victim repeatedly denied saying that he was going to get a knife or ever threatening Appellant. *Id.* at 48.

The victim's testimony is in direct contradiction with Appellant's testimony that he only attacked the victim after feeling threatened because the victim turned to leave. *Id*. at 80. In addition, video surveillance and other witnesses corroborated the victim's testimony.

The trial court, as the finder of fact, was free to disbelieve Appellant's claim that he thought he was in danger, particularly where the other evidence clearly contradicted Appellant's version of events. The trial court was also free to believe the victim's testimony, which was corroborated by the video surveillance and the testimony of the other witnesses. Because the trial court's credibility determinations are supported by the record, we conclude that the Commonwealth presented sufficient evidence to disprove Appellant's claim of self-defense.

Appellant next avers that the Commonwealth presented insufficient evidence to support the verdict for Carrying a Firearm Without a License.

Section 6106 of the Uniform Firearms Act provides, in relevant part, that to convict a defendant for this offense, the Commonwealth must prove "(a) that the weapon was a firearm, (b) that the firearm was unlicensed, and (c) that where the firearm was concealed on or about the person, it was outside his home or place of business." 18 Pa.C.S. § 6106; *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (*quoting Commonwealth v. Bavusa,* 750 A.2d 855, 857 (Pa. Super. 2000)).

The element of possession can be established by the testimony of a witness who observes a defendant with a firearm, even in a situation where no firearm is recovered. ***Commonwealth v. Robinson*** 817 A.2d 1153, 1161-62 (Pa.Super.2003). The testimony of witnesses alone "is all that is necessary" to establish sufficient evidence of possession. ***Id.*** at 1162.

In the instant case, the totality of the evidence, when viewed in a light most favorable to the Commonwealth, supports the factual finding that Appellant possessed a firearm as defined by 18 Pa.C.S. § 6106. The restaurant's internal surveillance video clearly showed Appellant brandishing a firearm. N.T., 4/23/15, at 8. Moreover, the victim and his manager, Mapp, both directly observed the firearm in Appellant's hand while they were next to Appellant. ***Id.*** at 25, 39. The victim described in detail the metal barrel that Appellant pointed at his temple, as well as his genuine belief that the situation was life-threatening. ***Id***. Mapp testified that Appellant "raise[d] a silver pistol with a black handle and. . . then pointed it to [the victim's] head." ***Id.*** at 13-16. Officer Mathieu corroborated these eyewitness accounts by recognizing the gun in the restaurant's surveillance video. ***Id.*** at 8.

Appellant also avers that the Commonwealth failed to prove that the gun was operable. He asserts, without citation to the record, that he raised a question of operability at trial. Appellant's Brief at 17. It is clear from the record however, that Appellant did not raise any question of the gun's

- 10 -

operability at trial. In fact, Appellant's defense at trial was that "[he] never had a gun." N.T., 4/23/15, at 8, 79. It is only in his brief to this Court that he asserts that the gun was inoperable. Appellant's Brief at 17. Because Appellant did not raise the issue of operability below, the issue is waived. Pa.R.A.P. 302(a).

Appellant also avers that the Commonwealth presented insufficient evidence to support the trial court's conviction of Carrying a Firearm in Philadelphia because, according to Appellant, the Commonwealth did not prove that he possessed the weapon outside the restaurant on a public street. Appellant's Brief at 20.

Section 6108 of the Uniform Firearms Act prohibits a Person from Carrying a Firearm in Philadelphia: "No person shall carry a firearm, rifle, or shotgun at any time upon the public streets or upon any public property in a city of the first class unless [such a person is licensed or exempt from the licensing requirement]." 18 Pa.C.S. § 6108. The Superior Court has defined "public place" for the purposes of Section 6108 as follows:

> [A] designation of those things which are *publici juris*, . . . and therefore considered as being owned by the public, the entire state or community, and not restricted to the dominion of a private person. It may also apply to any subject of property owned by a state, nation, or municipal corporation as such.

***Commonwealth v. Goosby***, 380 A.2d 802, 806 (Pa. Super. 1977).

In the absence of direct evidence that a defendant possessed a gun on a public street, a trier of fact may infer that a defendant did so based on

circumstantial evidence. *Commonwealth v. Hopkins,* 747 A.2d 910, 918 (Pa. Super. 2000). In *Hopkins*, this Court concluded that, although the victim was shot on the porch of a private residence, the circumstantial evidence was sufficient to support the reasonable inference that the defendant traveled at least some distance on a public street in order to be able to access the front entryway of the victim's home. *Id.*

Here, Mapp testified that when Appellant entered the restaurant, a waitress immediately escorted Appellant to the backroom where he began arguing with the victim. N.T., 4/23/15, at 15. When Mapp then entered the room, he saw Appellant remove the firearm from his pocket. *Id*.

Appellant presented no evidence that he obtained the gun inside the restaurant or that he left the gun inside the restaurant after the incident. As such, the trial court reasonably inferred that Appellant both entered and exited the restaurant while in possession of a firearm, and thus possessed it "upon the public streets" of Philadelphia. 18 Pa.C.S. § 6108. Accordingly, we conclude that Appellant is not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2016

- 12 -